JOHN S. WINTERMUTE, PROSECUTOR, v. MEYER C. ELLEN-
STEIN, MICHAEL P. DUFFY, PEARCE R. FRANKLIN
AND ANTHONY F. MINISI, MEMBERS OF A MUNICIPAL
INVESTIGATION COMMITTEE OF THE CITY OF NEW-
ARK, NEW JERSEY, AND THE HONORABLE CHARLES
W. PARKER, DEFENDANTS.

Argued October 7, 1936—Decided October 23, 1936.

Before Justices TRENCHARD, BODINE and HEHER.

For the prosecutor, *Edward R. McGlynn.*

For the defendants, *Frank A. Boettner* and *Harry V. Osborne.*

BODINE, J.    The prosecutor was deputy director of the
department of revenue and finance of the city of Newark

until January 17th, 1936. He then became deputy director of the department of parks and public property. On or about May 21st, 1936, he was served with a subpœna directing him to appear before the members of an investigation committee appointed by the board of commissioners of the city of Newark by resolution adopted December 13th, 1935. This he refused to do and resort was had to the Supreme Court under section 61 of the Evidence act. 2 *Comp. Stat., p.* 2238.

Prosecutor contends (1) that there is no legal justification for the appointment of an investigation committee in the city of Newark, and (2) that there is no authority in law to compel his appearance before such a committee. In order to test the legality of the court's action in ordering process of subpœna to issue, a writ of *certiorari* was allowed. The italics hereafter appearing in quotation are ours.

We will consider, first, the legality of the resolution creating the investigating committee. It provides, so far as needs statement, as follows: "Be it resolved by the Board of Commissioners of the City of Newark, that a committee consisting of Meyer C. Ellenstein, Michael P. Duffy, Pearce R. Franklin and Anthony F. Minisi, members of the Board of Commissioners of the City of Newark, be and the same hereby is appointed to examine any and all officials, *officers and employes of the City of Newark, in relation to the discharge of his or their official duties* or conduct, as the case may be, and to examine and investigate such additional subjects or matters, falling within the jurisdiction of this Board, as may, in the judgment of said committee, require or necessitate such examination and investigation."

It is argued that the resolution is invalid because it appoints a committee to investigate matters not within the jurisdiction of the board of commissioners. A reading of the resolution, in whole or any part, is a refutation of the argument. Newark is governed under the Walsh act. Section 4 of that act (*Pamph. L.* 1911, *p.* 465, as amended, *Pamph. L.* 1915, *p.* 495; *Pamph. L.* 1929, *p.* 623; *Pamph. L.* 1930, *p.* 996; *Cum. Supp. Comp. Stat.* 1930, § 136-8), provides in part as follows: "The Board of commissioners shall have and possess all

administrative, judicial and legislative powers and duties now had and possessed and exercised by the mayor and city council and all other executive or legislative bodies in any municipality, and have complete control over the affairs of such municipality. \* \* \* *they shall prescribe the powers and duties of all officers* and employes and they may assign particular officers and employes to one or more departments and may require any officer or employe to perform duties in two or more departments, provided the work required of such officer or employe in such different departments be similar in character and *make such other rules and regulations as may be necessary or proper for the efficient and economical conduct of the business of the city."*

It is said that there must be a legitimate object in view for the creation of an investigating committee, and that the board of commissioners may do so only for the purpose of acquiring information which it seeks to use in connection with its function of legislation. This argument overlooks the fact that the board of commissioners possess and have all administrative, judicial and legislative powers formerly possessed and exercised by the mayor and city council and all other executive and legislative bodies in the city. There is no separation of these powers as under the state constitution setting up a form of government. The obvious reason for the granting of this power to the committee was so that the commission might do those things which were necessary for the efficient and economical conduct of the business of the city. To examine officers and employes of the city of Newark in relation to the performance of their official duties is clearly a legitimate exercise of the power vested in the city commissioners under the Walsh act. Such examinations are absolutely necessary if the city commissioners are to efficiently and economically conduct the public business as required by law. The city commission cannot be charged with a duty to efficiently and economically conduct the public business and be denied the power to investigate the acts of their subordinates.

It is urged that the prosecutor has immunity from investi-

gation if the resolution providing therefor does not reveal on its face the object towards which the investigation is to be conducted, the purpose therefor, and the matter which it is intended to serve. Reliance is placed upon the recent case of *Jones* v. *Securilies and Exchange Commission, 56 Sup. Ct. Rep.* 654. The difference is that there the investigation was into a citizen's private affairs when there was nothing pending before a public board. This, however, is a case where those charged with the administration of the affairs of the city of Newark desire to question, under oath, a deputy commissioner with respect to his official conduct in a public office. To deny such power would be to deny to the municipality good government. The resolution clearly limits the investigation to legitimate matters. The board of commissioners cannot make rules and regulations necessary to govern their subordinates if they cannot find out what the subordinates have been doing in regard to public matters. They cannot properly discharge their trust if they are to be denied information about matters entrusted by them to subordinates. They are entitled to call upon subordinate public employes for an accounting under oath of their acts in public office.

Prosecutor's second contention is that the order directing that a subpœna issue out of this court was illegal. The action, as before noted, was taken pursuant to section 61 of the Evidence act. 2 *Comp. Slat., p.* 2238. This statute provides, in so far as pertinent, as follows: "Whenever the common council or other governing board or body of any municipality within this state shall have appointed a committee of members of their body upon any subject or matter within the jurisdiction of such common council or other governing board or body, or to examine any officer of the municipality or member of said council or other governing board or body, in relation to the discharge of his official duties or conduct, or concerning the possession or disposition by him, in his official capacity, of any property belonging to the said municipality, or to inspect or examine any book account, voucher or document in his possession or under his control as such officer, relating to the affairs or interests of such municipality such

committee is hereby authorized to issue a *subpœna ad testificandum,* or *subpœna duces tecum,* to any person within this state, to appear before them to give testimony or information required for the purpose above mentioned; and any member of such committee is hereby authorized to administer oaths to all such witnesses as may appear or be brought before them; the subpœnas herein provided for may be served by any police officer or constable of the said municipality; and in case any person summoned shall refuse to obey such subpœna, or to give testimony, or to answer questions as required, or to produce any books, papers or documents as required, any justice of the Supreme Court of this state may, upon application made to him and upon proof being made of such refusal, make an order awarding process of subpœna, or *subpœna duces tecum,* out of the said court for such witness to appear and testify before such committee."

The first enactment of a somewhat similar statute appears as a supplement to an act concerning witnesses. *Pamph. L.* 1870, *p.* 62. In Nixon's Digest the statutes in part composing our Evidence act are to be found under the heading of an act entitled "An act concerning witnesses." Hence, the manner in which the first statute dealing with a method of compelling the attendance of witnesses in municipal investigation appears. The Revision of 1877 contains a modification of the 1870 act and embodies it as section 47 of an act concerning evidence.

The revision commissioners making the change of placement were Chief Justice Beasley, Mr. Justice Depue, later chief justice, and Mr. Cortlandt Parker, then the leading lawyer of the state. They were assisted by the law and equity reporters, lawyers of the highest standing. The classification continued till the Evidence act was revised in *Pamph. L.* 1900, *p.* 362. The section in question there and since has appeared as section 61 of the Evidence act. Since the statute has been on the books for nearly sixty years under its present title, it would seem that the sufficiency thereof was not open to controversy. It certainly was labeled by distinguished jurists who were well aware of the constitutional provisions,

and it has so remained in its present form save for necessary changes. It has been recognized by the executive, legislative and judicial departments of the government and has been unchallenged by the bar so far as the reported cases show. It is too late now to disturb it. *State* v. *Kelsey,* 44 *N. J. L.* 1; *Engeman* v. *State,* 54 *Id.* 247.

It is next urged that the Evidence act is unconstitutional since it seeks to endow a municipal body with the function of the judiciary, and further that it makes the Supreme Court a mere adjunct to a municipal investigatory body. If a witness refused to appear before a commissioner in this state in order to give testimony to be used in another state, any justice of this court by an act passed March 6th, 1828, could make an order awarding process of subpœna requiring such witness to appear. The power has been exercised ever since and careful research reveals no challenge by bench or bar. See *Nixon's Digest,* 886. The legislature has frequently made like provision in aid of other investigating boards and commissions. The board of public utility commissioners has power of subpœna and in the event of disobedience recourse may be had to the Supreme Court. *Pamph. L.* 1907, *p.* 449, as amended *Pamph. L.* 1909, *p.* 254.

It is more than sufficient to say that for more than sixty years the statute now challenged has been upon the books. It has been observed and in force during all that time. It is perhaps only necessary to give the peremptory answer that the practice under the act for a much shorter period would have irresistibly fixed the construction and it is now too late to control the matter. *State* v. *Kelsey,* 44 *N. J. L.* 1 (at *p.* 23).

Other matters suggested and argued have been considered but they do not require discussion.

The proceedings under review are affirmed.