## CHARLES J. J. CHAPMAN, RELATOR, v. HARLEY S. EDWARDS, DEFENDANT.

Argued October 3, 1939—Decided January 31, 1940.

Before BROGAN, CHIEF JUSTICE, and Justices DONGES and PORTER.

For the relator, *Leo S. Carney* and *Charles E. McCraith, Jr.*

For the defendant, *John H. Cooper.*

The opinion of the court was delivered by

DONGES, J. This case is before the court on an information in the nature of *quo warranto,* plea thereto, replication and stipulation of facts. The office involved is that of street commissioner of the town of Kearny.

It appears that this office was created by an ordinance adopted in 1900. In 1906 an amendment was adopted fixing a term of two years, a one-year term of office having been fixed by the original ordinance. On January 1st, 1908, one John Durkin was appointed street commissioner and every two years thereafter he was reappointed until January 1st, 1935, when the relator, Charles J. J. Chapman was appointed. He served one term of two years and on January 1st, 1937, John Durkin was again appointed and served until his death on October 21st, 1938.

At the general election in 1937, the voters of Kearny voted to adopt the provisions of the Civil Service act. In pursuance of this election, the governing body on June 22d, 1938, adopted an ordinance to effectuate the adoption of the Civil Service law. This ordinance referred to two schedules submitted by the Civil Service Commission, one containing a complete list of the then employes of the town, giving suggested titles for each employe, salary and department, the other being a schedule of all offices and positions. The ordinance provided: "The schedules heretofore referred to herein and recommended to this Council for adoption by the Commission * * * are hereby made part of this ordinance in their entirety the same as though specifically set forth herein, said schedules being filed with the Clerk of this Council coincident with the passing of this ordinance." The schedules were not published with the ordinance. The schedules set out the office of street commissioner, naming the then incumbent, the date of appointment, salary, title of position and proposed title of position, both of which latter were "street commissioner." This ordinance contained a provision repealing all ordinances or parts of ordinances inconsistent therewith.

As stated, Durkin died on October 21st, 1938, and on October 26th, 1938, the town council adopted a resolution

directing the town clerk to request the Civil Service Commission to conduct an examination for the purpose of certifying a list of those eligible to appointment. Such an examination was held on December 29th, 1938, and on April 12th, 1939, the Civil Service Commission certified the relator as eligible and he was the only veteran certified on the list. Under the provisions of the statute, he thus became entitled to appointment, unless, of course, certain other acts done, presently to be mentioned, were lawful.

The defendant, Harley S. Edwards, was a member of council. At a regular meeting of council on April 26th, 1939, he tendered his resignation, which was accepted, and immediately a majority of council adopted a resolution appointing him street commissioner. Defendant claims that the office of street commissioner is not within the purview of the Civil Service law and, further, that under the provisions of *R. S.* 11:27-11.1 he, as the holder of a Distinguished Service Cross, for military service in the World War, was entitled to appointment without participation in the examination and certification as the result of examination.

Relator applied to Chief Justice Brogan, by petition, for an order setting aside the appointment, under *R. S.* 11:25-4 *et seq.* The petition was dismissed, and the pending proceeding was instituted. *Chapman* v. *Frobisher et al.,* 123 *N. J. L.* 127; 8 *Atl. Rep.* (*2d*) 76.

The first question is whether or not the office of street commissioner is within the classified civil service. It is argued by respondent that the failure to publish with the ordinance the schedule of offices and positions, in which this office was included is fatal and that the prior ordinance which fixed a term of two years is still in effect. We think this is not so. It may be that if the relator had to rely entirely upon the reference to this office in the schedule to show a repealer of the ordinance fixing a term and to place this office in the classified service, there would be some force to the argument, but here the body of the ordinance itself operates to place all offices and positions in the town service (excepting, of course, those otherwise provided for by statute) in the classified service. The failure to publish the schedules did not void the

entire ordinance, whatever its effect upon the matter contained in the schedules alone. The ordinance set up a complete civil service plan, laying down specifications and rules of employment, advancement, &c., and provided: "The specifications herein provided shall apply to all existing authorized offices, positions and employments * * *." It also provided for the repealer of inconsistent ordinances. We think its clear effect, therefore, was to place all offices, positions and employments that could be subject to civil service, within the classified service, without express listing or designation of such places.

In this connection, it is significant that the resolution, adopted April 26th, 1939, appointing defendant, does not fix any term of office, neither that fixed in the ordinance of April 25th, 1906, nor any other term.

The next contention of the defendant is that the office of street commissioner should be considered in the unclassified service because it is the office of a head of a department. The ordinance creating the office puts certain responsibilities on the incumbent with respect to the streets and defines the duties of the office. But it does not seem to us to create an office that would be the head of a department. It gives no power to appoint subordinates or to supervise the work of such persons. As was said by Mr. Justice Swayze in *McKenzie* v. *Elliott*, 77 *N. J. L.* 43:

"I should have some difficulty in holding that an officer * * * who has no office in any county building, and no clerical force under him, is a head of a department within the meaning of the statute. It seems more probable that 'heads of departments' in section 11 are the same class of officials as 'appointing officers and heads of departments' in section 17 and the 'head of a department, office or institution' in section 21. In those sections, the words evidently refer to some officer who has a clerical or other force under him and appointed by him."

We conclude that the office was within the classified civil service.

The remaining point concerns the status of the defendant under *R. S.* 11:27-11.1. This provides:

"Any soldier, sailor, marine or nurse, who has served in the army, navy or marine corps of the United States of America, and who has been awarded the Congressional Medal of Honor, the Distinguished Service Cross, or Navy Cross, while a resident of this State, shall be employed or promoted without complying with any of the rules or regulations of the Civil Service Commission."

This plain language limits the benefit sought to be conferred to those who were residents of New Jersey when they received such decorations. Defendant was presented with the Distinguished Service Cross at Chaumont, France, on January 11th, 1919. He was a resident of Pennsylvania when he entered the army and never resided in New Jersey until some time after his discharge. He had never been a resident of New Jersey prior to January 11th, 1919. We conclude, therefore, that he does not come within the class sought to be benefited by the act. He argues that he did not actually receive the decoration in France, in January, 1919, but when he received an official certificate from the Secretary of War in March, 1925. We conclude, however, that the actual award was made on the prior date, and that the document of March, 1925, was merely a confirmatory certificate, attesting what had theretofore been done.

These views lead us to the conclusion that relator is entitled to the office and that a writ of ouster should issue.