ROBERT VAN VOLKENBURGH ET AL., PROSECUTORS, v. CIVIL SERVICE COMMISSION OF NEW JERSEY AND COUNCIL OF THE TOWN OF KEARNY, RESPONDENTS.

Submitted October 7, 1941—Decided December 20, 1941.

Before Brogan, Chief Justice, and Justices Case and Heher.

For the prosecutors, *Lord & Lord* (*William A. Lord*).

For the respondents, *David T. Wilentz, Harry A. Walsh* and *Calvin S. Koch*.

The opinion of the court was delivered by

Case, J. The writ of *certiorari* brings up the record leading to and including a determination of the Civil Service Commission to hold an examination for patrolmen of the police department of the Town of Kearny, the same to be open to male residents of the Town of Kearny who had been such for a period of at least five years and who had also been citizens of the United States for a period of at least five years. The prosecutors are chancemen with whatever standing goes with that designation in connection with the Kearny police department. Their contention is that because of the provisions of the various ordinances of the Town of Kearny the examination should be a promotional one open only to men who have served at least three months as chancemen on the Kearny police force. Our study brings us to the conclusion that the writ should be dismissed. Our reasons follow:

The original police ordinance of the Town of Kearny, in so far as we are shown, was passed April 18th, 1899, and consisted, except for a short repealer of inconsistent ordinances, of a single section, namely:

"That a day and night police be established in the Town of Kearny, consisting of a Chief of Police, a Sergeant and twelve Patrolmen or Policemen to be appointed by the said Council as soon as may be after the passage of this Ordinance and to serve under such rules and regulations as the Council may from time to time adopt, provided, that no Policeman or Police Officer shall be removed except for neglect of duty, misbehavior, incompetency or inability to serve."

That was not a comprehensive ordinance. It did little

more than fix the number of the members of the force, classify them and provide against removal except for cause. On October 11th, 1905, the town council passed a supplement consisting of 73 numbered paragraphs designated "rules." Rules 62 to 72, inclusive, were beneath the title "Chancemen." The rules with respect to chancemen provided that no candidate should be enrolled as a chanceman until he should have established to the satisfaction of the police committee that for five years he had been a citizen of the United States and a resident of the Town of Kearny, that he was of good moral character, &c., and finally (rule 72) that "all applicants must serve at least three months as chanceman before being made a patrolman." It is quite clear, however, that the ordinance did not regard chancemen as members of the police "force." This is made manifest in many ways, only one of which need be cited. Rule 1 provided that "each and every member of the police force shall devote his whole time and attention to the business of the department and he is expressly prohibited from following any other calling, or being employed in any other business." That requirement laid upon members of the force clearly did not apply to chancemen. The employment of chancemen in police duties was desultory in the extreme as will presently be noted.

On February 28th, 1917, a further ordinance was passed (amending and supplementing the 1899 ordinance) fixing salaries of the chief of police, the captain of police, the lieutenant of police, the sergeant of police and of the patrolmen, and fixing the "pay" of chancemen on a *per diem* basis with a ratable part thereof for fractions of a day. On June 10th, 1925, the town council passed an ordinance revising the police department rules. The ordinance by its title is amendatory of a supplemental police ordinance adopted August 11th, 1905; but there appears to have been no ordinance passed on August 11th, 1905. It is apparent from the remaining portions of the title and from the subject-matter that the ordinance is amendatory of the October 11th, 1905, supplement, *supra,* and we so hold; and inasmuch as the 1905 ordinance is thereby "amended to read" as in the 1925 ordinance set forth, it follows that only so many of the 1905

provisions survive as are re-enacted in the 1925 amendment. That amendatory ordinance is of great length. It has 182 sections and fills 48 printed pages. It contains no reference to chancemen. Therefore, it erased from the ordinance book of the town all provisions regarding chancemen except the pay schedule. So, too, the ordinances thereafter passed contain no provision concerning chancemen except two very brief ordinances, one passed February 12th, 1930, and the other passed July 23d, 1941, each entitled "An Ordinance to fix the salaries of chancemen" (not amendatory of or supplementary to the police ordinance); the first fixing the *per diem* at $5 and the second at $7. On December 12th, 1934, an ordinance was passed, effective for the term of two years from the date of passage, entitled "An Ordinance to amend an ordinance entitled 'An Ordinance to provide for the establishment, regulation and control of a day and night police and to regulate and define the manner of their appointment and removal'" (the 1899 ordinance), which contained references to the various members of the department from patrolmen to the chief, stated that the object of the passage of the amendment was to regulate the number of officers and men employed in the department to 83 men and no more and repealed inconsistent ordinances. The number of 83 was the sum total of the designated positions reaching from patrolmen up to the chief. No mention was made of chancemen. This ordinance can now have no force except to emphasize that as of that time the chancemen were not of the officers and men employed in the recognized "department."

Finally, the ordinance of June 10th, 1925, contained a list of qualifications necessary to become a member of the police department, no one of which was preliminary service as a chanceman either for three months or otherwise. In the minutes of the meeting of the Civil Service Commission held May 21st, 1940, printed in the record, it is stated that "at the time of the adoption of the Civil Service Act on November 2d, 1937, by the Town of Kearny the Commission was advised that 73 chancemen were employed." We may assume that to be an entirely accurate statement not only of the information given to the Civil Service Commission but of the fact,

and we may further recognize that then, theretofore and thereafter there was occasional call for special and limited service from selected members of the group, without thereby adding weight to the argument that the appointment of new patrolmen must be made therefrom. If there was an organization of chancemen it was most informal, and the occasions on which chancemen were called to service were relatively few. According to the compilation printed in the record 59 of the 73 names certified as chancemen rendered no service from January 1st, 1937, to and including November 16th, 1937. Four served on occasions ranging from one to five days; three on occasions ranging from six to ten days; with less than a half dozen rendering service on more than thirty occasions during that period of ten and one-half months. In the three years or more from January 1st, 1937, to the date of the check made by the Civil Service Commission twelve men rendered services. Of those twelve six were on the payroll for less than ten days and two from 25 to 45 days. The remaining four served 57, 61, 121 and 130 days, respectively. We consider, however, that the number of days of employment is of little importance compared with the lack of ordinance authority for the contention which the prosecutors here assert.

There is no ordinance authority for holding that these men are regular members of the department within the full application of *Albert* v. *Caldwell*, 123 *N. J. L.* 266. Further, there is no extant ordinance requirement that new patrolmen shall be selected from the lists of the chancemen. This leaves the claim of the prosecutors for preferment to the single question of whether they are members of the department in such sense as to entitle them to be considered for promotion under *R. S.* 11:22-34. The Town of Kearny seeks a holding that they are not, but the question is not argued to our satisfaction and is moot at this juncture. The Civil Service Commission considered that it was impracticable to hold a promotion examination open only to the chancemen. Considering only the cited statutory authority (*R. S.* 11:22-34) and not the ordinance provisions which we have disposed of, we consider that the commission was within its reasonable discretion.

With our finding that the prosecutors have no support in the borough ordinances for a promotional examination and our further finding that the circumstances justify the Civil Service Commission in pronouncing an examination exclusively for the chancemen impracticable under the circumstances, we perceive no ground upon which they may pursue their application. But even if the prosecutors had sound support for their contention that the appointment of new patrolmen should be from their number, they would not yet have been harmed under the later decision by the Court of Errors and Appeals in *Albert* v. *Caldwell*, 127 *N. J. L.* 203, which held that "no legal wrong was done to the chancemen by examining others with them or indeed until the ordinance was violated by the actual appointment of an outside candidate not a chanceman, where there were chanceman eligibles who had passed the examination." The chancemen are not *per se* excluded from taking the open examination. We take the view that no legal wrong would be done to them by examining others with them or even thereafter unless and until there should be an actual appointment of an outside candidate not a chanceman in disregard of chanceman eligibles who should have passed the examination. Therefore, even upon the assumption that prosecutors have rights, the time is not ripe for relief.

For the reasons stated the writ will be dismissed, with costs.