SIMON J. FALCEY, APPELLANT, v. CIVIL SERVICE COM-
MISSION OF NEW JERSEY, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 9, 1953—Decided October 8, 1953.

Before Judges EASTWOOD, JAYNE and FRANCIS.

*Mr. Harry A. Walsh* argued the cause for the appellant (*Mr. Thorn Lord,* attorney).

*Mr. James Rosen* argued the cause for the respondent (*Mr. Theodore D. Parsons,* Attorney-General, attorney).

The opinion of the court was delivered by

FRANCIS, J. A. D.   A vacancy having arisen in the position of chief probation officer of Mercer County, a County Court judge promoted Lewis A. Marshall to fill it.   The promotion was made without competitive examination and it was later approved by the Civil Service Commission. Appellant, a probation officer of the county, attacks the validity of the action as discriminatory, contending that the appointment should have been made only after competitive examination.

The facts appear to be undisputed.   Lewis A. Marshall was appointed assistant probation officer for Mercer County on July 1, 1928, and probation officer on January 1, 1941.   On November 15, 1941 the then judge of the Court of Common Pleas promoted him to assistant chief probation officer without examination, competitive or otherwise, and the Civil Service Commission approved on December 9, 1941.   Then, following the announcement of the chief probation officer of his intention to retire as of January 1, 1953, some time prior to December 19, 1952 the only county judge in office

completed and filed with the Civil Service Commission a "personnel action form" indicating his promotion appointment of Marshall to chief probation officer, also effective January 1, 1953. On February 20, 1953 the Civil Service notified the court that: "Promotion of Louis A. Marshall from his position of Asst. Chief Probation Officer to Chief Probation Officer has been approved under Rule 24, effective 1–1–53."

Under *N. J. S.* 2A:168–5 it was necessary for the County Court order of appointment to be filed in the county clerk's office. The appendix does not contain such order but there is included an order dated February 2, 1953 dealing with additional appointments in the probation department and which amends an order dated December 16, 1952. The parties seem to recognize that the original order covered Marshall's appointment.

It is suggested that the Marshall promotion is invalid under *Zahn v. Dept. of Civil Service*, 8 *N. J.* 423 (1952), because it did not conform with the requirements of Rule 24 of the Commission. This rule provides that where there are not more than three persons eligible to take a promotion test and the preference rights of veterans will not be affected, the president may, in his discretion, authorize such promotion without competitive test.

Zahn was promoted by the Director of Public Safety of Irvington without first having obtained a waiver of examination from the president. Thereafter, and subsequent to the expiration of the term of office of the director, a request for such approval was made and denied. In invalidating the promotion, the Supreme Court declared that the authorization permitted by Rule 24 is a condition precedent and "any appointment to be valid must be effective within the term of the appointing authority."

In the present situation, while the promotional order was filed prior to an authorization from the president, the personnel form referred to which set forth the action "desired," namely, approval of the promotion, was received by the commission prior to the effective date of the appointment.

Although the approval was not given until almost two months after the promotion became operative, it was made effective retroactively to that date. The retroactive sanction, or ratification, although not a desirable practice, having been given within the term of the appointing authority, removes the bar of the *Zahn* case.

Appellant Falcey became a probation officer on November 15, 1941, and remained such until he was given the designation principal probation officer in charge of adults on February 2, 1953.

After Marshall was promoted but prior to the approval thereof under Rule 24, Falcey, through his attorney, presented objections to the validity of the order to the Civil Service Department and requested a hearing. On February 19, 1953 the Department denied the request by letter, saying the appointment was in order and consequently no basis existed for a hearing.

The justification for Marshall's appointment, according to respondent, arose from his status as assistant chief probation officer. Since he was the only person in that class, the claim is that under Rule 24 the appointing authority could promote him without examination upon obtaining the approval of the president of the Civil Service Commission. On the other hand, Falcey claims that there is not now, and there never has been, any statutory warrant for such a position as assistant chief probation officer. And he contends that for purposes of advancement to chief probation officer he and all the other probation officers of the county stand on an equal footing, which means that there should be a competitive examination for the post.

In the memorandum filed with the Civil Service Commission by appellant's attorney in support of his request for a hearing it was argued, among other things, that in a county where the county court consisted of two judges, there is no authority in one of them to appoint a chief probation officer. The point is not argued on this appeal but because it involves considerations of the public interest and of the public service, we feel constrained to consider it.

The applicable statute covering the appointment of chief probation officer provides:

"The judge or judges of the county court in each county, or a majority of them, acting jointly, may appoint a chief probation officer, and, on application of the chief probation officer, such men and women probation officers as may be necessary. * * *" (*N. J. S.* 2A:168-5)

The County Court of Mercer County at the time in question consisted of two judges (*N. J. S.* 2A:3-13). Since there could not be a majority, the conclusion is obvious that the appointment had to represent their joint concurrence.

A similar statute in New York ordains:

"The judges of the court of general sessions of the county of . . . . , or a majority of them, shall appoint a chief probation officer * * *." (*Code of Criminal Procedure*, § 938, *McKinney's Consolidated Laws of New York Annotated*, vol. 66, part 2, p. 842.)

Queens County, to which this enactment applied, had two such judges. One of them suspended the supervisor of probation; the other dissented. Reviewing the action, the Appellate Division of the Supreme Court said:

"Moreover, respondent Downs, acting alone, had no power to suspend petitioner. Under the provisions of section 938 of the Code of Criminal Procedure, the power to appoint probation officers was vested in the judges of the County Court of Queens County, or a majority of them. As there are only two such judges, it necessarily follows that appointments may be made only by their joint action. * * * The power of removal is an incident to the power of appointment, and consequently the act of removal requires the concurrence of both County Judges." *Kreppein v. Downs*, 272 *App. Div.* 452, 72 *N. Y. S.* 2d 150, 152 (1947).

It is undisputed that at the time of the action here there was only one county judge functioning. A vacancy existed in the other office because the incumbent had resigned on being promoted to the Superior Court. The condition being a temporary one pending the selection of a successor, the question arises as to whether the surviving judge, acting alone, had authority to fill the position.

■ Ordinarily the death, disqualification or resignation of a judge does not create a legal impediment to the continued transaction of the affairs of the court. Such result arises only when the membership of the court is reduced below that legally required for the transaction of its business. 14 *Am. Jur., Courts*, § 58, *p.* 282; *Blend v. People*, 41 *N. Y.* 604 (*Ct. App.* 1870).

The chief probation officer is one of the most important officials of a county in the administration of criminal justice. He works very closely with the judges who necessarily place substantial reliance upon him and the reports made under his supervision, when they deal with problems of sentence. Harmonious relations are essential and the individual judges should have an opportunity, whenever possible, to satisfy themselves as to, and to agree upon, the qualifications and capacity of an applicant for the position. In recognition of this, the Legislature has placed the authority to appoint not in one member of a two-judge court but in both members. (If the two do not agree, the choice rests with the board of freeholders. *N. J. S.* 2*A*:3–8) For purposes of the designation, they sit as a court which cannot act through one of them. The fact that for a temporary period only one judge is in office cannot be said to transfuse into that one the power which the lawmakers have directed shall be exercised by the joint action of both. Under the circumstances, the selection of Marshall should have awaited the filling of the vacancy in the court and the action of the single judge was without legal efficacy.

■ It follows that the order of the County Court by which the appointment was made is invalid and the action of the respondent in approving it cannot be sustained.

Even if the appointment were not untenable for the reason stated, the approval of respondent would have to be set aside on another ground.

*Article* VII, § 1, *par.* 2, of the *Constitution of* 1947 provides that

"appointments and promotions in the civil service * * * shall be made according to merit and fitness to be ascertained, as far as

practicable, by examination, which, as far as practicable, shall be competitive; except that preference in appointments by reason of active service in any branch of the military or naval forces of the United States in time of war may be provided by law."

The statute relating to and controlling appointments and promotions in the county service has been on the statute books for many years, and its language conforms to the constitutional mandate, *N. J. S. A.* 11:21–3; 11:22–34. And no issue is presented in this proceeding with respect to the view of the Commission that the position of chief probation officer is in the classified service and subject to the provisions of the Civil Service Act.

▮▮ The Constitution and the statute mean that appointments and promotions in the Civil Service shall be made according to merits and fitness, and those attributes are to be determined by examination, which examination is to be competitive unless:

(1) examination is not practicable at all, and,

(2) competitive examination is not practicable.

It must be recognized that discretion is vested in the Civil Service Department over the determination of the existence or non-existence of these two escapes from the constitutional and legislative command. However, when used arbitrarily the discretion is subject to judicial review and correction. *DeStefano v. Civil Service Commission*, 130 *N. J. L.* 267, 269 (*E. & A.* 1943); *DeStefano v. Civil Service Commission*, 127 *N. J. L.* 58 (*Sup. Ct.* 1941).

The Constitution of the State of New York contains the same language as ours on the subject of civil service employment (*Art.* 5, § 6). The Court of Appeals of that state, in discussing the discretion of the Commission, said:

"The laws which have been passed [to implement this provision] are intended to provide the machinery by which, when practicable, competitive examinations may be held to determine merit and fitness. The Legislature has not attempted the impossible task of determining in what cases such examinations are practicable or to formulate the standards for comparisons of merit or fitness for particular positions. These are administrative details, appropriately intrusted to administrative officers. Statutes and administrative

orders, alike, must conform to the mandate of the Constitution. They cannot authorize a procedure which would disregard or nullify that mandate. * * * Disobedience or evasion of a constitutional mandate may not be tolerated even though such disobedience might, perhaps, at least temporarily, promote in some respects the best interests of the public. Arbitrary decision that in a given case it is not practicable to ascertain merit and fitness by competitive examination may be challenged and is subject to review by the courts." *Sloat v. Bd. of Examiners*, 274 *N. Y.* 367, 9 *N. E.* 2d 12, 112 *A. L. R.* 660 (*Ct. App.* 1937).

At an earlier date the same court dealt with the legal propriety of an act of the legislature which undertook to create an exception to the rule for examination. In *In re Keymer*, 148 *N. Y.* 219, 42 *N. E.* 667, 35 *L. R. A.* 447 (*Ct. App.* 1896), this was said:

"There is, however, another provision, fatal to the act, wherein it arbitrarily declares, that as to veterans, competitive examinations shall not be deemed practicable or necessary in cases where compensation does not exceed $4 per day.

"While it is true that the constitution contemplates that it may not always be practicable to ascertain merit and fitness by examinations, or to have those examinations competitive, yet a mere arbitrary declaration in an act of the legislature that competitive examinations of veterans are impracticable in cases where the compensation does not exceed $4 per day, is in plain violation of the provisions of the constitution making competitive examinations necessary."

A specific illustration of judicial review appears in *Scahill v. Drzewucki*, 269 *N. Y.* 343, 199 *N. E.* 506 (*Ct. App.* 1936). There a school mechanic and a mechanic's helper were appointed without examination. On being dismissed at a later date, they claimed that the Civil Service Commission had determined that it was impracticable to determine merit and fitness for such positions by examinations. The court held that such determination was subject to judicial review and declared that the positions were clearly of a kind where fitness and merit were capable of ascertainment by examination.

As already indicated, Rule 24, which was invoked by the respondent in support of its course of action, confers discretionary power on its president to authorize a promotion *without competitive examination* when not more than three

persons are eligible to take the promotion test, or when not more than three of those who are eligible file an application to take such test.

*N. J. S. A.* 11:27–4 requires the certification to the appointing authority of the names of the three candidates who, following examination, stand highest on the register. Presumably this statute formed the basis for the adoption of Rule 24. If there are not more than three persons eligible for promotion or not more than three persons who apply to take a prescribed test, from an administrative standpoint undoubtedly the Commission felt that competitive tests might be dispensed with in the discretion of its president. Assuming but not deciding that the Commission may delegate to its president the authority to act for it in the matter, plainly the discretion must be exercised in the light of the basic demand of the Constitution and statute referred to, which makes merit and fitness controlling as demonstrated by examination, as far as practicable, and competitive examination, if practicable. The discretion must be guided also by *N. J. S. A.* 11:22–34, declaring that:

"A vacancy in the higher classes of positions shall be filled, as far as it is consistent with the best interests of the service, by promotion following competitive tests open to those who have served a minimum time established by regulation in the lower class or classes of positions as may be designated. Promotions shall be based upon merit, to be ascertained by examinations provided by the commission, and upon the superior qualifications of the person promoted as shown by his previous service, due weight being given to seniority and experience. * * *."

It will be noted also that under Rule 24 the discretion conferred is to determine whether a promotion may be made without *competitive* test. No discretion is given to the president to waive the other requisite, namely, that merit and fitness shall be determined by examination, as far as practicable.

█ Consequently, when the promotion was sought here, the commission was duty bound to determine the merit and fitness of the proposed appointee or applicant by examination

unless, on certain facts found to exist, such examination was not practicable. The record before us contains no such determination and no recitation of any facts whatever on the subject.

The importance of a consideration of examination to determine merit and fitness, even if not competitive, is apparent from the service record of the appointee. He was promoted from probation officer to assistant chief probation officer in 1941 without examination, apparently under Rule 24. And now further promotion to the principal position in the department has been undertaken, again without examination. Considered in the abstract and without any reflection on the individual involved, the situation seems to call for cautious judgment in deciding whether examination is practicable.

■ Appellant requested a hearing before the appointment was approved by the commission. In view of the necessity for a factual determination on the practicability of examination, a hearing should have been granted at which the facts for and against the practicability of examination could be presented, and at the conclusion of which a determination of the issue would be made by the commission. Failure to accord such a hearing constituted error, which, under ordinary circumstances, would require a remand of the case to the commission for that purpose.

It must be kept in mind also that Rule 24 can be used as an instrument for defeating the public policy established by the civil service legislation. The classification of employees in the various grades in a department and the fixing of salaries within authorized ranges, is an administrative problem committed to the commission. Classifications are based necessarily on the duties involved. The creation of a one-man class with duties no different in degree or quality from those of a lower class would permit the one person as the only eligible to move upward under Rule 24 without competitive examination.

Appellant contended in his request for hearing that it was improper and discriminatory for the commission to say that

there was but one person or that there were less than three persons eligible for the promotion. His position was that there was neither authority nor basis in fact for the creation of the classification of assistant chief probation officer because the statute creates only a chief probation officer and probation officers. *N. J. S.* 2*A*:168-5. He claimed therefore in effect that the five probation officers in the department in addition to Marshall were in the eligible class.

Under the circumstances, a hearing should have been allowed at which both the factual and the legal basis for and against the classification could be presented and determined. The denial of this opportunity would result also in a remand of the record.

However, since there is no legal sanction for the appointment, the approval thereof by the respondent is nugatory. This being dispositive of the case, there is no need to remand for purposes of hearing.

Accordingly, the action of the respondent in approving the appointment is set aside.