16 N.J. 117 (1954)
106 A.2d 549
SIMON J. FALCEY, PLAINTIFF-RESPONDENT,
v.
CIVIL SERVICE COMMISSION OF NEW JERSEY, DEFENDANT-APPELLANT.
The Supreme Court of New Jersey.
Argued June 14, 1954.
Decided June 28, 1954.
*119 Mr. Joseph Lanigan, Deputy Attorney-General, argued the cause for the appellant (Mr. Grover C. Richman, Jr., Attorney-General, attorney).
Mr. George Warren argued the cause for the intervenor Lewis A. Marshall (Messrs. Warren & Stein, attorneys).
Mr. William Hunter argued the cause for the respondent (Mr. Thorn Lord, attorney; Mr. Harry A. Walsh, of counsel).
The opinion of the court was delivered by JACOBS, J.
The Appellate Division, in an opinion reported at 27 N.J. Super. 520 (1953), set aside the Civil Service Commission's approval of Judge Hutchinson's appointment of Lewis A. Marshall as Chief Probation Officer of Mercer County. We granted certification pursuant to application under R.R. 1:10-2. 14 N.J. 349.
On July 1, 1928 Mr. Marshall was appointed as assistant probation officer and he served as such until January 1, 1941, when he became probation officer. On November 15, 1941 Judge Katzenbach designated Assistant Chief Probation Officer Madden to succeed Chief Probation Officer Morrison, deceased, and on the same day he designated Mr. Marshall as assistant chief probation officer. This action was formally approved by the Civil Service Commission on December 9, 1941. Although the statutes make no specific reference to the position of assistant chief probation officer (R.S. 2:199-5; N.J.S. 2A:168-5), it was established as early as 1919 in Mercer County and was then approved by the Commission, presumably under its broad classification powers. R.S. 11:4-1; R.S. 11:5-1; R.S. 11:7-1 et seq. Cf. R.S. 11:19-2; R.S. 11:24-1. See Note, "Power or discretion of civil service commission in respect of classifying or grading positions in civil service" 134 A.L.R. 1103 (1941). The position has been continued without interruption or objection for 35 years in Mercer County, and for *120 lesser periods in many other counties in the State. At this late date we have little hesitancy in rejecting the respondent's contention that it has no lawful basis and that consequently all probation officers must stand on identical footing insofar as promotions to chief are concerned. Cf. Wintermute v. Ellenstein, 117 N.J.L. 274, 278 (Sup. Ct. 1936). Nor do we find any reason for questioning Mr. Marshall's promotion in 1941 to the position of assistant chief. His promotion had been approved by the Civil Service Commission without competitive examination under its rule which permitted waiver of examination where no more than three persons were eligible; in fact, there was only one other probation officer at that time and she chose to make no attack on Mr. Marshall's appointment. The respondent was first appointed as probation officer in 1941 when Mr. Marshall was designated as assistant chief, and he has actually been employed under some supervision by Mr. Marshall for many years; he is clearly in no present position to attack the 1941 designation. Cf. Covey v. City of Plainfield, 11 N.J. 375, 381 (1953); Clayton v. New Jersey Civil Service Commission, 120 N.J.L. 319, 321 (Sup. Ct. 1938).
Early in 1952 Mercer County Judge Hughes was appointed to the Superior Court and his successor was not appointed until 1953. In the interim, Judge Hutchinson was the only Mercer County judge. When the chief probation officer served notice that he would retire on January 1, 1953, Judge Hutchinson appointed Mr. Marshall as chief probation officer. In a letter to the Civil Service Commission dated January 9, 1953, Judge Hutchinson pointed out that Mr. Marshall had long been a probation officer and had served for 11 years as assistant chief; that he had served "well, faithfully and efficiently" and was a "competent administrator"; that his appointment was "the only logical and proper one"; and that it was "in the public interest" that he be promoted without competitive examination. The respondent, by letter dated February 13, 1953 to the Civil Service Commission, expressed fully his objections to Mr. Marshall's promotion *121 without competitive examination and requested a hearing. Shortly thereafter the Commission notified him that it found the promotion to be in order and that there was no basis for a hearing; on February 20, 1953 it formally approved the promotion, effective January 1, 1953.
The Appellate Division, after properly rejecting the contention that the promotion was invalid under Zahn v. Department of Civil Service, 8 N.J. 423 (1952), concluded that it must be struck down on the ground that, although no one had yet been named to succeed Judge Hughes, the remaining judge of the Mercer County Court had no authority to make the appointment. We are satisfied that this conclusion was unsound. Under the statutory provision in effect when the appointment was made (N.J.S. 2A:168-5) the "judge or judges of the county court" or a majority of them acting jointly had authority to appoint the chief probation officer. If there had been two Mercer County judges in office, neither could have made the appointment without the concurrence of the other. Cf. Kreppein v. Downs, 272 App. Div. 452, 72 N.Y.S.2d 150 (App. Div. 1947). In fact, however, there was only one in office and no one questions that he had power to exercise in full the functions of the Mercer County Court. See Const. 1947, Art. VI, § IV, par. 3. He did not know when Judge Hughes' successor would be appointed and, indeed, under N.J.S. 2A:3-13, the Governor's authority to make the appointment was conditioned upon the exercise of his judgment that "the public interest" required the additional judge. The vacancy had continued for almost a year and if the Governor had concluded not to make the appointment it would have continued for at least another year. The Legislature could hardly have contemplated that during such period the sole county judge would be disabled from filling the post of chief probation officer which is so vital an adjunct to the sound administration of justice. It seems clear to us that the statutory terminology is appropriate and should be construed to require that where the vacancy occurs while there is actually *122 only one qualified county judge, he may make the appointment.
The respondent next contends that, assuming that Judge Hutchinson had the power to make the appointment, it could be made only after competitive examination. See Const. 1947, Art. VII, § I, par. 2; R.S. 11:4-2; R.S. 11:10-7; R.S. 11:21-3; R.S. 11:22-34. The parties have not raised any question as to whether the position of chief probation officer belongs in the classified service; for present purposes we shall assume that it does, without, however, expressing any opinion on that issue. See N.J.S. 2A:168-5; R.S. 11:4-4(b); R.S. 11:22-2(d); Civil Service Commission of New Jersey v. O'Neill, 85 N.J.L. 92 (Sup. Ct. 1913), affirmed 86 N.J.L. 377 (E. & A. 1914); Chapman v. Edwards, 124 N.J.L. 192 (Sup. Ct. 1940). Similarly, we need not determine whether the position is in the county service and controlled by R.S. 11:21-3 and R.S. 11:22-34, or in the state service and controlled by R.S. 11:4-2 and R.S. 11:10-7. See Paddock v. Hudson County Board of Taxation, 82 N.J.L. 360 (Sup. Ct. 1912); Pierson v. O'Connor, 54 N.J.L. 36 (Sup. Ct. 1891). In either event, appointments and promotions in the Civil Service are to be made, as the Constitution directs, according to merit and fitness to be ascertained "as far as practicable" by examination. And vacancies in higher positions in the Civil Service are generally to be filled, as the statutes direct, by promotions from lower grades. R.S. 11:10-7; R.S. 11:22-34. The important social objectives of the constitutional and statutory provisions are evident; they are designed to aid in obtaining effective public service through personnel selected on the basis of proper standards and qualifications rather than upon political or other extraneous considerations. See Sullivan v. McOsker, 84 N.J.L. 380, 385 (E. & A. 1913).
The framers of the Constitution recognized that although competitive examination would be the general rule in Civil Service appointments and promotions, there would be situations *123 where such examination would not be practicable, and they made explicit provision therefor. In this respect they followed precedents in other states, notably New York where provision had originally been made in its constitution of 1894, that appointments and promotions in the civil service shall be made according to merit and fitness to be ascertained "so far as practicable" by examinations which, "so far as practicable," shall be competitive. In People ex rel. Sweet v. Lyman, 157 N.Y. 368, 52 N.E. 132 (1898), the New York Court of Appeals expressed the view that there are two classes of cases where the question of practicability may arise  "one, where the place is such that no examination can be had because the questions of merit and fitness for the particular place cannot be reached in that way; and the other, where an examination may be had, but different and additional tests will tend to secure an improved service by more accurately determining these questions." And it suggested that the words "so far as practicable" would be pertinent to a case where "the real merit and fitness of an appointee are sought to be determined by other methods which are surer and will more accurately determine those questions." While our cases have not embodied similar expressions, they have recognized that the Civil Service Commission has ample power to waive competitive examination on grounds of impracticability and that its action will not be upset on judicial review unless it is shown to have been arbitrary, capricious or unreasonable. See De Stefano v. Civil Service Commission, 130 N.J.L. 267, 269 (E. & A. 1943); Van Volkenburgh v. Civil Service Commission, 127 N.J.L. 479, 483 (Sup. Ct. 1941), affirmed 129 N.J.L. 101 (E. & A. 1942). Cf. Chambers v. Civil Service Commission, 129 N.J.L. 191 (E. & A. 1942). In the De Stefano case the Court of Errors and Appeals noted that the determination as to the practicability of filling a vacancy by a promotional examination was a proper administrative function which did not require prior formal hearing and which would be sustained if not in abuse of the Commission's discretion.
*124 Although reference has been made to Rule 24, which provides that the President of the Civil Service Commission may waive competitive examination where there are no more than three eligibles, we need not concern ourselves with its validity or scope. Cf. Zahn v. Department of Civil Service, supra; Covey v. City of Plainfield, supra; R.S. 11:5-1; R.S. 11:27-4. The approval of Mr. Marshall's appointment without competitive examination was made fairly and in good faith by the Commission itself after due consideration of all of the pertinent materials including the letter dated January 9, 1953 from Judge Hutchinson, and the letter dated February 9, 1953 from the respondent. Mr. Marshall had served in the probation office for almost 25 years and for 11 years had served as the sole assistant chief probation officer. The chief probation officer had been called upon to work closely with the county judge and his duties included highly responsible and confidential matters. Mr. Marshall's service as assistant chief had entailed actual performance, from time to time, of the duties of the chief and had furnished concrete evidence upon which Judge Hutchinson certified that he was "a competent administrator and fully capable of administering and directing this most important office." A competitive examination, open to probation officers having much lesser tenure and whose past duties had not included any of the supervisory functions discharged by Mr. Marshall for over a decade, would presumably have served little purpose; indeed, in the following excerpt from his letter, Judge Hutchinson suggested that passing over the assistant chief would have been disruptive:
"With these comparisons of length of service and other qualifications, there is no doubt in my mind that the only proper person presently a probation officer for the important office of Chief Probation Officer, is Mr. Marshall. If the position were opened to other probation officers of the staff and if, perchance, one of those other than Mr. Marshall should be more successful in a promotional examination than he, it would indeed be entirely disruptive of the morale, discipline and administration of the office which has thus far been of the highest, most excellent character, and the work of the probation office most effective in the rehabilitation of those over *125 whom they have supervision and in aiding and advising the court by pre-sentence investigations as to the dispositions to be made of juvenile delinquents and adult offenders."
Cf. Meriam, Public Personnel Problems, 57, 225 (1938).
Under all of the circumstances, we consider that the Commission's action in approving the appointment without competitive examination constituted a determination of impracticability and was well within its discretionary authority. We also consider that its conduct in making its approval effective as of January 1, 1953, and in rejecting the request for formal hearing, was in conformity with settled Commission practices and constituted a reasonable and incidental exercise of its broad administrative function. See De Stefano v. Civil Service Commission, supra; 27 N.J. Super., at page 524. Accordingly, the judgment of the Appellate Division is:
Reversed, with direction that the approval by the Civil Service Commission of Judge Hutchinson's appointment of Lewis A. Marshall as Chief Probation Officer of Mercer County be reinstated.
For reversal  Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN  7.
For affirmance  None.