ERNEST N. GIANNONE, PLAINTIFF-APPELLANT, v. LEO P. CARLIN, AS MAYOR OF THE CITY OF NEWARK, NEW JERSEY, DEFENDANT-RESPONDENT.

Argued January 9, 1956—Decided January 30, 1956.

512

Mr. *Aristo Dallavalle* argued the cause for the plaintiff-appellant (*Mr. William Furst,* attorney).

Mr. *Thomas M. Kane* argued the cause for the defendant-respondent (*Mr. Vincent P. Torppey,* attorney).

The opinion of the court was delivered by

OLIPHANT, J. This is an appeal from a judgment of the Appellate Division which affirmed a judgment of the Superior Court, Law Division, determining that the appellant was not entitled to tenure under *R. S.* 38:16–1 and *R. S.* 38:23*A*–3.

We granted certification under *R. R.* 1:10–2(*d*)(*e*).

The appellant is an honorably discharged veteran of World War II. By a resolution of the board of commissioners of the respondent city, dated May 27, 1953, he was appointed "Housing Manager of the Veterans' Temporary Housing of the City of Newark at an annual salary of $5,600.00 * * * to fill a vacancy now existing." He continued in such position or work until July 22, 1954, when he was advised by a letter of the Mayor, Leo P. Carlin, that his employment "will terminate at the close of business on July 31, 1954." The vacancy which he was appointed to fill apparently was created under the following conditions.

On September 10, 1947 by ordinance the city created "A Temporary 'Office of Veterans' Temporary Housing Administration' " in accordance with the contracts entered into between the City of Newark and the Public Housing and Development Authority of the State of New Jersey, which office it stated:

"shall \* \* \* expedite the veterans' *temporary* housing program and administer the use, occupancy and maintenance of housing units thereunder provided."

Paragraph 2 of this ordinance created the "temporary position of 'Housing Manager' at an annual salary of not less than $6,000.00." The ordinance further provided:

"7. The 'Office of Veterans' Temporary Housing Administration' established hereunder, shall cease and determine not more than one year from the effective date of this ordinance, and all temporary positions herein provided, and the rights of any and all persons then in occupancy of any and all of said temporary positions, shall thereupon cease and terminate, subject, in any event, to an earlier determination thereof by the Board of Commissioners of said 'Office of Veterans' Temporary Housing Administration' and the aforesaid temporary positions created therein."

This ordinance was enacted pursuant to *L.* 1946, *c.* 323, which declared an emergency and which had for its purpose the providing for veterans of sufficient emergency housing under the program set forth therein.

Thereafter, on August 25, 1948 the city passed an ordinance, No. 8237, extending the life of the "Office of Veterans' Temporary Housing Administration" for a period of two years until September 1950, which contained similar language to that in the prior ordinance with respect to the termination of temporary positions. It is thus obvious that the resolution of May 27, 1953, appointing the appellant as "Housing Manager of the Veterans' Temporary Housing of the City of Newark," did not expressly or impliedly create the temporary position to which the appellant was thereby appointed. Up to this point no ordinance provided for the creation of a permanent position so titled.

On October 14, 1953 the city adopted an ordinance, No. 961, "An Ordinance to Amend an Ordinance Entitled: 'An Ordinance creating permanent positions in the Office of the Director of the Department of Public Affairs, Bureau of Health, Newark City Hospital, Convalescent Hospital, Ivy Haven, Division of Welfare, *Federal Public Housing Units—Managed by City,* and establishing salaries therefor.'" This

ordinance created the position of "Manager, Federal Public Housing Units Managed by City, Annual Minimum Salary $5,600.00, Annual Maximum Salary $6,100.00."

The complaint filed below states a cause of action in lieu of prerogative writ and alleges that the plaintiff-appellant was entitled to all the rights and benefits contained in the provision of *R. S.* 38:16–1 *et seq.*, as amended, and demanded a restoration of the rights and privileges pertaining to the position and the payment of such sums as will compensate him for the loss of salary from the date of the termination of his employment until reinstated.

The cause of action is premised on the contention that as a veteran he is entitled to tenure under *R. S.* 38:16–1 and 38:23A–3. The trial court held that there was no permanent office created prior to the ordinance 961 on October 14, 1953, and hence that no such office existed at the time of the resolution of May 27, 1953, and that he was not entitled to the protection of the Veterans' Tenure Act, *R. S.* 38:16–1, because he never held any position or office in the municipality the term of which was not fixed by law and that all the records indicated that the appointment was temporary and at the will of the municipality. The Appellate Division affirmed the judgment of the trial court on the opinion below.

The appellant contends that prior to the ordinance of October 14, 1953 he was functioning as a *de facto* officer and became a *de jure* officer upon the adoption of that ordinance. He then concludes the *position* held by the appellant became a permanent position upon the adoption of the ordinance.

Conceding that neither a temporary position or a vacancy actually existed at the time of the appointment by reason of the fact that they were terminated by the time limitation in the ordinance of August 25, 1948, he then states that an appointment to a temporary position to "fill a vacancy" and a continuance of office after the office is legally created by an ordinance is analogous to an appointment for a "definite term" under an ordinance that is silent with respect to the term of office. He then concludes that both appointments, in effect, are appointments for definite terms. This argument

completely misconceives the statutes relating to the powers of the municipality in this particular instance.

The original ordinance of September 10, 1947, creating the temporary positions and fixing the salaries thereof was enacted pursuant to *L.* 1946, *c.* 323, which is an emergency statute. This act took effect October 1, 1946, and by *section* 26 it was to expire on July 1, 1948, unless extended by act of the Legislature. By *L.* 1948, *c.* 12, *section* 26 was amended to post- pone the expiration date to July 1, 1949. By *L.* 1949, *c.* 5, *section* 26 was further amended to postpone the expiration date to July 1, 1950.

By *L.* 1949, *c.* 186, *section* 26 was amended to add certain sections to the exception in respect to expiration but left the expiration date, other than the specified sections, at July 1, 1950. This temporary emergency legislation was left in that posture until 1954, and then by *L.* 1954, *c.* 25, an extension of contracts and authority to contract for temporary emergency housing was authorized, this act being a supplement to *L.* 1946, *c.* 323.

A further extension of for not over two years was authorized by *L.* 1954, *c.* 206, also a supplement to *L.* 1946, *c.* 323. This act took effect August 5, 1954 and *inter alia* provided, "and shall continue in full force and effect so long as any of the provisions of the act to which this act is a supplement, continues in force and effect." The words "any of the pro- visions" are important because it was not the general expira- tion date that governed because some of the sections were excepted from the expiration as pointed out above.

By *L.* 1955, *c.* 50, a further supplement was enacted pro- viding for a further extension of existing contracts where the municipality by resolution "shall find that a need for emer- gency housing continues in such municipality." By *section* 2 it is provided that "this act shall take effect immediately and shall continue in full force and effect until June 1, 1956." This act went into effect on June 9, 1955. It should also be noted that this latest extension is "notwithstanding any terms or conditions of such contract and any provisions of said act to the contrary."

It appears that the exceptions excepted in *section* 26, including those added by the amendment of *L.* 1949, *c.* 186, are administrative to enable the State Authority created by the original statute to wind up its affairs. The original act and all the acts amendatory thereof and supplemental thereto are palpably of an emergency and temporary nature. This being so, all ordinances or resolutions enacted by municipalities under the powers conferred by these statutes must likewise be of a temporary and emergency nature.

■ A municipal office or position, if not created by statute, can come into being only by ordinance of the governing body of a municipality. *Handlon v. Town of Belleville,* 4 *N. J.* 99, 109 (1950). Under *R. S.* 40:46–23 salary ranges must be fixed in the first instance by ordinance. *Howard v. Mayor and Board of Finance of City of Paterson,* 6 *N. J.* 373, 378 (1951). See also *Jersey City v. Dept. of Civil Service,* 7 *N. J.* 509, 524 (1951).

■ A municipal government is a government of enumerated powers acting by a delegated authority; it has no inherent jurisdiction to make laws or adopt regulations of government. *Gilbert & Sentinel Sales Corp. v. Town of Irvington,* 20 *N. J.* 432 (1956).

■ Any exercise of a delegated power by a municipality in a manner not within the purview of the governing statute is capricious and *ultra vires* of the delegated powers, *Oliva v. City of Garfield,* 1 *N. J.* 184, 190 (1948); *Hasbrouck Heights Hospital Ass'n v. Borough of Hasbrouck Heights,* 15 *N. J.* 447, 455 (1954).

■ Hence, since *L.* 1946, *c.* 323, as amended and supplemented, is an emergency statute delegating emergency powers to municipalities under definitely fixed time limitations, any ordinance enacted pursuant to this delegated power creating offices or positions should and must create offices and positions of a temporary rather than of a permanent nature. That is exactly what happened with respect to the position here in question under the ordinance of September 10, 1947, the ordinance of August 25, 1948 and the resolution of May 27, 1953. None of these municipal actions created anything

other than the temporary position of "Housing Manager of the Veterans' Temporary Housing of the City of Newark," and this is clear by the express terms of the ordinances.

The ordinance of October 14, 1953 created a position of "Manager, Federal Public Housing Units, Managed by the City." It is obvious that the appellant's original appointment carried a different title than the position or office created by the ordinance of October 14, 1953. In other words, it is not clear from the record that he ever fulfilled the duties of the position created by the subsequently adopted ordinance so as to constitute him a *de facto* holder of the office or position which he now claims to hold. It is likewise unclear from the record, in view of the difference in title, as to whether the position or office "Manager, Federal Public Housing Units, Managed by the City" was predicated solely on the temporary power delegated by *L.* 1946, *c.* 323, as amended and supplemented, or rather was based on other applicable statutes which might authorize the creation of such a position. We therefore express no opinion as to whether the city had the power to create such position by the ordinance of October 14, 1953.

As of May 27, 1953 the city only had the power to appoint the appellant to a temporary position, and we concur in the finding of the trial court as affirmed by the Appellate Division that that appointment was temporary and at the will of the municipality.

There was no permanent *de jure* office existing at that time invested with duties related to the management of the Veterans' Temporary Housing program ordained and enacted by the statute, and as we have said, the statute conferred no such power to create such office or position upon the municipality.

█ We do not agree, as the appellant contends, that the ordinance of October 14, 1953 ratified and confirmed his appointment to the position on May 27, 1953, nor can we further imply that such appointment was for an indefinite term. Such a conclusion on our part would violate the general rule that there cannot be a *de facto* officer without a

*de jure* office.  *Handlon v. Town of Belleville, supra; Jersey City v. Dept. of Civil Service, supra.*

Since there was no such office or position as created by the ordinance of October 14, 1953, his original appointment was a temporary appointment and necessarily had to be under the statute applicable to the ordinance and the Civil Service Commission was so advised.

The Civil Service Act, *R. S.* 11:22–14, 15, provides for temporary appointments, and it goes without saying that no such employment can give rights to permanent tenure under the Veterans' Act, for that would in itself defeat the civil service policy of appointment to positions in the classified service according to merit and fitness.  And this has so been held in *Adams v. Atlantic City*, 26 *N. J. Misc.* 259 (*Sup. Ct.* 1948) and *Dodd v. Van Riper*, 135 *N. J. L.* 167 (*E. & A.* 1947).

While we agree the Veterans' Tenure Act is a statute *in pari materia*, we must state it was not intended to supersede the Civil Service Act *pro tanto*.  That would mean that a veteran appointed even temporarily to an office or position within the classified service would automatically have tenure.  This cannot be so, and *a fortiori* it cannot be so of a temporary position.  Plaintiff merely held a temporary appointment under the Civil Service Law.  *Shalvoy v. Johnson*, 84 *N. J. L.* 547 (*Sup. Ct.* 1913).  *Cf. Barringer v. Miele*, 6 *N. J.* 139, 151 (1951).

Judgment is affirmed.  No costs.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.