56 N.J. Super. 533 (1959)
153 A.2d 712
CITY OF JERSEY CITY, ETC., PLAINTIFF-APPELLANT AND CROSS-RESPONDENT,
v.
CHESTER G. BABULA, (AND 17 OTHERS), DEFENDANTS-RESPONDENTS AND CROSS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 8, 1959.
Decided July 13, 1959.
*535 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. Meyer Pesin argued the cause for plaintiff as appellant and cross-respondent (Mr. Ezra L. Nolan, Corporation Counsel of the City of Jersey City, attorney; Messrs. William N. Johnson, Assistant Corporation Counsel, and Mr. Pesin, Assistant Corporation Counsel, of counsel and on the brief).
Mr. Benjamin H. Chodash argued the cause for defendants as respondents and cross-appellants.
Mr. Theodore I. Botter, Deputy Attorney General, argued the cause for Civil Service Commission (Mr. David D. Furman, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by FREUND, J.A.D.
Between January 1 and May 4, 1957, 18 patrolmen employed by the City of Jersey City were *536 assigned by various directives of the municipal police department to serve as detectives, and their salaries were increased accordingly. On May 14, 1957 an election was held in Jersey City for members of the board of commissioners. On June 1 and July 1, 1957 pursuant to the order of a newly-elected commissioner the 18 detectives, all of the opposite political persuasion, were "reassigned" to their former patrolman's rank, with consequent reduction in pay. A detective earns from $517.50 to $917.50 more pay per year than a patrolman.
The 18 patrolmen (hereinafter "appellants") thereupon challenged their demotions by appealing to the Civil Service Commission. It should be noted that during the same time periods mentioned above 75 patrolmen had been assigned to serve as detectives and thereafter returned, but only 18 appealed. After a hearing, the Civil Service Commission determined that the position of "detective" is a rank in Jersey City; that the rank of detective is a higher rank than that of patrolman and, by reason of the differential in pay, is a promotion; that, in order for the appointment to be permanent, it must be made from a list of eligibles established pursuant to promotional examination; that, prior to the establishment of such a list, any appointments made to the position of detective are temporary only; that, no promotional examination having been given to the appellants, the rank was temporary and subject to reduction at any time, except as to those who received tenure by virtue of R.S. 40:174-148 (hereinafter the "George Act").
Both Jersey City and the appellants appeal from the Commission's determination. The city is aggrieved by that portion of the ruling which directs the holding of a promotional examination. It contends that the appellants were properly demoted, not because they had never taken an examination, but because they had been merely "detailed" to serve as detectives in the first place and therefore could have been reassigned for any reason by the commissioner acting within his discretion as Director of Public Safety.
*537 A cross-appeal is taken by the demoted patrolmen. They object to that portion of the commission's ruling which held their appointments to the detective position to be temporary. They say promotional examinations were not required as a condition precedent to permanent appointment at the time they were appointed and that their appointments were validly made on a permanent basis. Neither the city nor the appellants appeal from the determination that there is a permanent rank of detective in the Jersey City police department. See N.J.S.A. 11:22-34; compare State ex rel. Reilly v. Civil Service Commission, 8 Wash.2d 498, 112 P.2d 987, 134 A.L.R. 1100 (Sup. Ct. 1941).
We deal first with the appellants' contention that they achieved permanent status from the outset of their respective appointments, with full rights of tenure attaching immediately. No authority is cited to support this contention. Instead, the appellants' chief argument is that the George Act (R.S. 40:174-148) is inapplicable. That statute provides:
"1. Whenever, in any police department of any city of the first class in this state, any member of such department shall have been appointed or designated as detective under or by authority of a resolution of the governing body of such city, and by and with the consent of the state civil service commission, and shall have performed the duties of such detective for a period of five years, he shall not hereafter be reduced in rank or restored to the performance of duties ordinarily performed by patrolmen in such department except upon charges and after hearing. Hereafter any such person shall hold the rank of detective in such department and be entitled to the emoluments thereof."
Appellants argue that this statute should not be construed as requiring five years' service before a permanent position can be achieved, but merely as protecting from demotion those who have already served five years as acting detectives. Appellants maintain that the statute was designed to correct a situation existing for years which found members of the police force functioning as detectives, but without a detective's pay, and that the George Act conferred *538 upon such acting detectives pay commensurate with duties performed, plus protection from discharge except upon charges brought and hearings held. From this, appellants come to the apparent conclusion that the statute does not apply to those who were appointed as detectives and did in fact receive detectives' pay during their appointment, and that as to such persons there is nothing preventing their appointments from being considered permanent.
We find no merit in this position. Irrespective of what evil the George Act was designed to meet  indeed, even assuming its inapplicability, the fact remains there was nothing in the nature of appellants' appointments to indicate they thereby succeeded to permanent assignments as detectives. We note that the city has interpreted R.S. 40:174-148 as allowing the detail of a detective to be terminated at will by the appointing authority prior to the running of the five-year period. The personnel action forms, filed with the Department of Civil Service, reveal that the appellants had been merely "detailed" to serve as detectives. In one such form, the word "Promotion" was crossed out and the word "Detail" inserted in its place, as indicating the particular personnel action desired by the appointing authority. And the transitory nature of the assignment is further indicated by the notation on the form that additional compensation was provided by ordinance "when so detailed as a Detective." Thus neither the police department nor the Civil Service Department ever approved these details as permanent positions, and nothing has been submitted on this appeal to impel us to a contrary conclusion. We are satisfied, therefore, that appellants' rights, privileges and duties in the detective detail were of a temporary character and that the appointing authority had the power, under such cases as Barringer v. Miele, 6 N.J. 139, 144 (1951), and Bertone v. Sullivan, 12 N.J. Super. 330, 333 (App. Div. 1951), to terminate that detail. Cf. 10 Am. Jur., Civil Service (1958 Cum. Supp.), § 8, p. 139.
*539 We next consider the propriety of the Civil Service Commission's determination that in order for the appointment to the rank of detective to be permanent, it must be made from a list of eligibles established pursuant to a promotional examination. Both the city and the appellants assert that such determination was extrajudicial, arbitrary, and capricious in that there was no issue before the Commission concerning the holding of examinations. The argument is that the sole issue presented was whether the Director of Public Safety had the authority to demote the 18 members of the force without charges being brought or hearings held, and that the jurisdiction of the Commission to render a decision, delimited by R.S. 11:15-6, was exceeded.
The jurisdictional attack just mentioned is without basis. The determination to hold a promotional examination is essentially an administrative and not a judicial function, within the competence and jurisdiction of the Commission at all times, and no hearing on notice to the parties is required. See DeStefano v. Civil Service Commission, 130 N.J.L. 267, 269 (E. & A. 1943). See also Falcey v. Civil Service Commission, 16 N.J. 117, 123 (1954). The task of determining for what positions an examination is practicable has been called an "administrative detail." Sloat v. Board of Examiners, 274 N.Y. 367, 9 N.E.2d 12, 112 A.L.R. 660 (Ct. App. 1937). See, generally, Annotation, "Discretion of civil service commission as regards promotional examinations for eligible list," 75 A.L.R. 1234 (1931).
The question thus dissolves into an inquiry whether the exercise of that administrative power was so unreasonable as to warrant its correction by judicial intervention. We do not conceive that the order for an examination can be thus characterized. In determining the status of the appellants, the Commission necessarily had to consider whether competitive examinations were a prerequisite to promotion. That it found in the affirmative on this issue affords no basis to a charge that in so doing it acted arbitrarily.
*540 Art. VII, § 1, par. 2, of the 1947 Constitution provides that:
"Appointments and promotions in the civil service of the State, and of such political subdivisions as may be provided by law, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination, which, as far as practicable, shall be competitive; * * *."
See R.S. 11:21-3 and N.J.S.A. 11:22-34 to the same effect. Testimony was adduced at the hearing to demonstrate that it is not practicable to ascertain the merit and fitness of a patrolman to become a detective by formal examination. The city argues that to become a detective a patrolman must have the ability to grasp, retain and instinctively apply police procedures, to make proper investigations, to process and secure evidence, and to test the strength and legal quality of evidence for presentation at trial.
We, however, agree in fullest measure with the Commission's ruling that such qualities can be measured by examination. Indeed, it cannot be overlooked that the Legislature has recognized that, generally, promotions within the police force will be on the basis of promotional examination. N.J.S.A. 11:21-3.1. See 10 Am. Jur., Civil Service, § 10, pp. 929-30. It is significant that the administrative discretion in this case has been exercised in keeping with the constitutional mandate that such examinations be held. Most important, there is absent here any circumstance which would tend even remotely to indicate that the Commission has abused its discretion. Flanagan v. Civil Service Department, 29 N.J. 1, 12 (1959).
Two points remain. Jersey City contends that the enactment of the George Act constitutes a legislative expression that a competitive examination for the rank of detective is impracticable, and that the five-year period established by that statute is the sole condition precedent to achieving permanency in the position. This argument is based upon an erroneous construction of the statute. The George Act *541 expressly provides permanency is achieved after performing the duties of the office for five years and after valid appointment thereto "with the consent of the state civil service commission." The Commission has in turn, by its determination in this proceeding, established that its consent will be secured only after qualification through examination. Moreover, where the Legislature has decided upon some other test for promotion, it has specifically designated that the taking of an examination is not necessary. See N.J.S.A. 11:21-3.1. It has not done so in the George Act.
Lastly, appellants reason from the Falcey case, supra, that the Commission has waived the right to require a promotional examination, and this because it allegedly approved the appointment of detectives in Jersey City for many years without ever suggesting an examination. But in the Falcey case, the Commission was deemed to have waived the necessity for an examination by its affirmative action in approving in good faith a county judge's appointment of an assistant chief probation officer to chief probation officer. 16 N.J. at page 124. There is nothing in that case to lend support to the conception that the Commission's failure to act over a period of years constitutes the determination of impracticability contemplated by the constitutional provision where, as here, the Commission had never given any formal approval of appellants' promotion.
We find what was said in Carls v. Civil Service Commission, 17 N.J. 215, 223 (1955), particularly pertinent to this proceeding:
"The Constitution appropriately expresses the broad principles designed to obtain effective public performance through civil service personnel chosen on the basis of merit rather than politics [and] it leaves the actual machinery for their effectuation in the hands of the legislative and executive. We find nothing in the record to indicate that the operation of that machinery in the instant matter has in anywise infringed the constitutional principles."
The determination and order of the Civil Service Commission are in all respects affirmed.