60 N.J. Super. 307 (1960)
158 A.2d 834
PETER CAPIBIANCO, APPELLANT,
v.
CIVIL SERVICE COMMISSION OF NEW JERSEY AND CITY OF ASBURY PARK, A MUNICIPAL CORPORATION, ETC., RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 7, 1960.
Decided March 14, 1960.
*310 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. Charles Frankel argued the cause for appellant.
Mr. Aszensio R. Albarelli argued the cause for respondent City of Asbury Park.
Mr. Theodore I. Botter, Deputy Attorney General, argued the cause for respondent Civil Service Commission (Mr. David D. Furman, Attorney General, attorney; Mr. Botter, on the brief).
*311 The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Capibianco appeals from a determination of the Civil Service Commission holding that (1) he never acquired permanent status after his assignment to duty in a temporary capacity as Chief of Police of the Asbury Park Police Department, and (2) since a vacancy existed in that position, the Civil Service Department properly took action to fill the position permanently by holding a competitive promotional examination and certifying a list of eligibles for appointment.
Capibianco joined the Asbury Park police force in 1930. The city adopted civil service in 1940. In 1945 Capibianco took competitive examinations for promotion to the positions of captain, deputy chief and chief of police. Having passed the examinations, he was placed on the list of eligibles for the respective positions and thereafter was permanently appointed to the position of captain. On September 10, 1955 he was appointed deputy chief by the City Manager of Asbury Park, who was the appointing authority under R.S. 40:82-4(d), 40:82-5. Swede v. Clifton, 22 N.J. 303, 308 (1956), affirming 39 N.J. Super. 366 (App. Div. 1956). The 1945 list of eligibles had by that time expired (R.S. 11:9-10; Civil Service Rule 39), so that Capibianco could not be appointed permanently to the position of deputy chief without taking a new competitive examination or without the Civil Service Commission approving such promotion under Civil Service Rule 24. That rule provides, in part, that "When there are not more than three persons eligible to take the promotion test or not more than three of those who are eligible file application to take such test and the preference rights of veterans will not be affected the president [of the Commission] may, in his discretion, authorize such promotion without competitive test." Since the Civil Service Department had no list of eligibles available for certification to the position of deputy chief, and Capibianco was the only police captain serving at that time, the Civil Service Department treated the attempted promotion *312 of Capibianco to deputy chief as a request for promotion under Rule 24. The Civil Service Commission thereupon approved the promotion, the permanent appointment to be effective as of November 17, 1955. The letter of approval sent to the city manager stated that the period from the effective date he had requested, September 10, 1955, to that fixed by the Commission, November 17, 1955, "shall be under temporary status."
This history of Capibianco's appointment as deputy chief is relevant by way of comparison with his present claim to appointment as chief of police and the procedures later followed in this regard.
Appellant has held the position of deputy chief since November 17, 1955. The Civil Service Commission records reflect no change from this permanent appointment.
On July 30, 1957 the city manager appointed Capibianco "Acting Chief" of the Asbury Park Police Department, "due to the temporary absence of Chief Fred Lembke." Chief Lembke, who had been on sick leave since July 30, 1957, permanently retired on January 1, 1958. Shortly thereafter, on January 14, 1958, the Mayor and Council of Asbury Park, by a 3-2 vote, recommended that the city manager permanently appoint Capibianco chief of police. He did not act on the recommendation.
The governing body thereafter approved an increase in Capibianco's salary. On June 25, 1958 the city manager wrote appellant as follows:
"Kindly be advised that the Mayor and Council have approved an increase to Chief's salary to be paid to you, although you are Acting Chief. This will be retroactive to the date of your appointment to Acting Chief, July 30, 1957." (Italics ours)
The salary change was "recorded" by the Civil Service Department, but Capibianco continued on its records as "Deputy Chief."
On or about November 15, 1958 the city manager requested the Civil Service Commission to hold an examination *313 for chief of police among eligible applicants in order to establish a list from which he could make a permanent appointment. The Commission scheduled such an examination for January 9, 1959, open to police officers with the ranks of deputy chief and captain. There were two deputy chiefs eligible to take the examination (plaintiff being one) and three captains. The deputy chiefs declined to take the examination, which was held as scheduled. The three captains took the test, a list of eligibles was thereafter certified, and on March 11, 1959 the city manager appointed one of them chief of police.
In the meantime, and after the examination had been announced, Capibianco's attorney wrote the Commission, protesting the scheduling and holding of the examination as a violation of N.J.S.A. 11:22-38 and characterizing the city manager's request that an examination be held as, in effect, "a demotion or reduction in rank," and therefore contrary to law. In this and a subsequent letter the attorney called for an investigation by the Civil Service Department before any examination was scheduled. The Commission considered the protest at its meeting of December 16, 1958. The result was a request that Capibianco's attorney submit in affidavit form any information he might have to substantiate the claim that his client held the title of chief of police on a permanent civil service basis.
The requested information was never submitted. Instead, appellant instituted an action in lieu of prerogative writs, asserting that he was entitled to permanent appointment as chief of police as a matter of law, and seeking to restrain the holding of the examination. The Law Division judge denied the restraint, ruling that plaintiff would not suffer irreparable harm by the holding and taking of the examination. Both sides then moved for summary judgment on the pleadings. The court dismissed the complaint and both motions, noting that plaintiff had not furnished the Commission with proof to substantiate his claim, nor had the Commission held a hearing under either R.S. 11:22-39 *314 or 11:22-40  a step subsequent to an investigation. The trial judge ruled that in the light of the facts presented, it was not in the interests of justice to dispense with requiring plaintiff to exhaust his administrative remedies before the Commission.
Although the Commission did not recognize that Capibianco had a right of appeal to it from the action of its chief examiner in scheduling a competitive examination, or that it had ever indicated it would grant him a hearing on his purported claim of tenure as chief, the Commission nonetheless deferred to the court's wishes and entertained the matter. No witnesses were called to testify, the parties stipulating to the facts in lieu of taking testimony. There was received in evidence everything submitted to the Law Division, together with the letters heretofore referred to.
The Commission found that Capibianco's status had never risen above that of permanent deputy chief, assigned temporarily to fill the duties of chief of police. In its view, to hold otherwise would do violence to the Constitution and statutory provisions requiring the holding of competitive examinations where practicable in all promotional situations. The Commission considered as baseless any argument that holding an examination for appointment to the office of chief was impracticable. The fact that Capibianco was a disabled veteran did not, in its opinion, alter his status when he assumed the duties of chief of police in an acting capacity, since none of the veterans' tenure statutes operated where a civil service employee temporarily filled a vacancy existing in a position falling within the competitive division of the classified Civil Service. The Commission accordingly entered the decision, determination and judgment here under appeal.
Capibianco's contention is that no vacancy existed in the office of chief of police because of his appointment to that position on July 30, 1957, and therefore no competitive examination should have been held, nor any appointment made by virtue thereof. This argument is spelled out in the following fashion: The city manager, in appointing him *315 to the position of acting chief on July 30, 1957, conferred upon him the full authority of chief of police. Having continued in that status until Chief Lembke retired on January 1, 1958 and for more than three months thereafter, his retention in that position was equivalent to a permanent appointment under R.S. 11:22-6. This statute provides that appointments and promotions to positions in the competitive classes of the classified service shall be for a probationary period of three months; and unless probationer is notified in writing at the expiration of such period that he will not receive a permanent appointment, his retention in the service is equivalent to a final and absolute appointment. Having exercised the full powers of chief of police for about 18 months before the calling of a competitive examination, and his salary having been increased to that of chief, he gained permanent status as chief of police.
We find no merit in the argument.
The city manager's letter to Capibianco under date of July 30, 1957 clearly designates him as "Acting Chief * * * due to the temporary absence of Chief Fred Lembke." (emphasis ours) At best, this letter may be construed as nothing more than a temporary appointment to the duties and authority pertaining to the permanent position of chief of police. Incidentally, there is no proof that a position of "Acting Chief" exists in Asbury Park as a permanent position, and this was admitted at oral argument. The city manager's letter cannot be considered as creating such a position, for a de jure position must be created by statute or by ordinance of the municipal governing body. Giannone v. Carlin, 20 N.J. 511, 517 (1956).
The designation "acting chief" connotes, in common acceptance, one who acts in place of the chief, but is not the chief himself; by very definition, it excludes any claim to the permanent position of "chief." This conclusion is also required as a matter of law. Tenure applies only to permanent and not to temporary appointments, to permanent and not to temporary positions. Giannone v. Carlin, above, *316 20 N.J., at page 519; Barringer v. Miele, 6 N.J. 139, 144 (1951); Shalvoy v. Johnson, 84 N.J.L. 547 (Sup. Ct. 1913).
It need hardly be said that the action of the governing body on January 14, 1958 in recommending Capibianco's appointment as chief of police was not binding on the city manager. His refusal to act thereon was legally correct and clearly showed that he did not intend to appoint Capibianco permanently to the position of chief.
Similarly, the governing body's approval of an increase in Capibianco's salary to that of chief was certainly not binding on the city manager. He alone had the authority to appoint the head of the department, as provided by law. R.S. 40:82-4(d) and 5; Swede v. Clifton, above. The city manager's letter of June 25, 1958, informing Capibianco of this salary increase, is entirely conclusive of the fact that he did not intend to appoint him chief of police. The letter is quoted above; it advises Capibianco that the mayor and council had approved an increase to chief's salary "although you are Acting Chief," and the increase was made retroactive to the date of his "appointment to Acting Chief, July 30, 1957."
We hold, therefore, that the mere appointment of Capibianco as acting chief to discharge temporarily the duties of chief could not ripen into a permanent position. Jersey City v. Babula, 56 N.J. Super. 533 (App. Div. 1959). There was no permanent appointment here.
Our Constitution provides that appointments and promotions in the civil service "shall be made according to merit and fitness to be ascertained, as far as practicable, by examination, which, as far as practicable, shall be competitive; * * *." 1947 Const., Art. VII, Sec. I, par. 2; and see Falcey v. Civil Service Commission, 16 N.J. 117, 122 (1954). A parallel expression is found in the Civil Service Act, R.S. 11:21-3, relating to municipalities. See, also, N.J.S.A. 11:22-34. And R.S. 11:21-1, applicable to municipalities, provides generally that "No appointing authority *317 shall select or appoint a person for appointment, employment, promotion or reinstatement except in accordance with this subtitle [R.S. 11:19-1 et seq., as amended] and the rules and regulations prescribed thereunder."
In the present case the Civil Service Commission did not consider it impracticable, with respect to the position of chief of police, to determine the merit and fitness of a candidate for appointment by competitive examination. In fact, after receiving the city manager's request that such a test be held, it deemed that course entirely practicable and approved and scheduled the holding of a competitive examination in order that an eligible list could be submitted to him and from which he could make the appointment. The examination was held.
In Jersey City v. Babula, above, 56 N.J. Super., at page 539, we held that the determination to hold a promotional examination is essentially an administrative and not a judicial function, within the competence and jurisdiction of the Commission at all times. No hearing on notice is required. Our inquiry is directed to whether the exercise of the administrative power lodged in the Commission was so unreasonable as to warrant its correction by judicial intervention. Here, as in that case, we hold that the scheduling and holding of the examination for chief of police was entirely proper.
A consideration of N.J.S.A. 11:22-34 reinforces our conclusion. That section of the Civil Service Act provides that a vacancy in the higher classes of positions "shall be filled, so far as it is consistent with the best interests of the service, by promotion following competitive tests open to those who have served a minimum time established by regulation in the lower class or classes of positions as may be designated. Promotions shall be based upon merit, to be ascertained by examinations provided by the commission, and upon the superior qualifications of the person promoted as shown by his previous service, due weight being given to seniority and experience. * * *" The statute goes on *318 to provide that an increase in salary of a person holding a position within the scope of the rules prescribed by the Commission, beyond the limit fixed for the grade in which the position is classified, "shall be deemed a promotion for the purpose of this section." The effect of this latter provision is to prohibit permanent increases in salary, which would constitute a promotion, without merit and fitness for the promotion first having been determined by competitive examination.
The requirement of N.J.S.A. 11:22-34, that higher positions be filled from the lower grades after competitive examination, is carried out by Civil Service Rule 24.
We note that the Commission declined to pass on the validity of paying a permanent employee the salary of the position to which he is temporarily assigned. It is clear, however, that the payment of such salary, even where it constitutes an increase over the salary in the position to which the employee has been permanently appointed (here the position of deputy chief), does not convert the temporary appointment into a promotion. Unless there is affirmative approval by the Commission of a promotion to a new position, expressly waiving competitive examination as impracticable  see the provision of Civil Service Rule 24 mentioned early in this opinion, and the Falcey and Babula cases, above  no person can acquire tenure to the permanent position. No such permanent rights can constitutionally be acquired unless the promotion follows competitive examination, where such examination is practicable.
As for appellant's claim to permanent status as chief of police, based on R.S. 11:22-6 establishing a three-month probationary period, we hold that this section of the Civil Service Act has reference to permanent appointments only, and not temporary ones. There are other sections of the statute which expressly deal with temporary appointments, e.g., R.S. 11:10-3, 11:11-1 and 11:11-2, relating to the state service, and 11:22-14 and 15, dealing with counties, municipalities and school districts.
*319 To adopt appellant's contention that R.S. 11:22-6 must be construed to apply to temporary appointees, and that it grants them permanent status at the end of the probationary period unless written notice is given that there will not be an absolute appointment, would be contrary to the policy evident throughout the Civil Service Act.
The general intention of the act that temporary appointees shall fill positions only in emergencies, and that positions shall be filled by examination in the ordinary manner as quickly as practicable, is evident from a consideration of R.S. 11:22-14 and 15. The former provides:
"The head of a department, office or institution of a county, municipality or school district operating under this subtitle may, in cases of emergency, employ temporarily, subject to the subsequent approval of the commission, a person or persons to carry out the work of such department, office or institution. The head of the department, office or institution shall, upon the employment of such person or persons, immediately give notice thereof to the commission, and as soon thereafter as practicable, a person shall be selected in accordance with this subtitle, whereupon the services of the person or persons so temporarily employed shall cease."
And R.S. 11:22-15 limits such temporary employments to two months, although the Commission may, after considering the circumstances, grant an extension of not more than two months upon request of the department head. Such request must be made before the expiration of the initial period and show that the emergency requiring the temporary employment still exists. Successive temporary appointments to the same position are prohibited.
While Capibianco's employment as acting chief may have violated R.S. 11:22-15, this is no reason to declare that he thereby gained permanent status. The mere passage of time during which a temporary appointee serves in office, and the failure of the Civil Service Commission to hold an examination or take other action against such an appointee, cannot convert a temporary status into a permanent one. See the Shalvoy and Giannone cases, above; Hilsenrad v. *320 Miller, 284 N.Y. 445, 31 N.E.2d 895 (Ct. App. 1940); Terry v. Little Rock Civil Service Commission, 216 Ark. 322, 225 S.W.2d 13 (Sup. Ct. 1949); June v. Department of Health, 345 Mich. 359, 75 N.W.2d 804 (Sup. Ct. 1956).
Nor does the Veterans' Act  Capibianco is a veteran  grant tenure to persons temporarily employed in positions governed by the Civil Service Act. Giannone v. Carlin, above, 20 N.J., at page 519; Dodd v. Van Riper, 135 N.J.L. 167, 173-174 (E. & A. 1947); Adams v. Atlantic City, 26 N.J. Misc. 259, 262, 59 A.2d 825 (Sup. Ct. 1948).
Capibianco contends that the holding of an examination for chief of police, and denying him tenure in that position, runs counter to various statutory provisions, namely R.S. 11:22-6, 11:22-38 (as amended), and 40:47-6 (as amended). The fact is that all of these statutes apply to persons holding permanent positions; they are inapplicable to temporary appointments. As to R.S. 40:47-6, as amended, see Blum v. Civil Service Commission, 129 N.J.L. 75 (E. & A. 1942), affirming 128 N.J.L. 30 (Sup. Ct. 1942).
None of the cases relied on by appellant is applicable. Appellant asserts that this case falls squarely within Falcey v. Civil Service Commission, 16 N.J. 117 (1954). No temporary appointment was involved there; the basic issue was under what circumstances an examination could be dispensed with.
Affirmed.