27 N.J. Super. 284 (1953)
99 A.2d 177
STATE OF NEW JERSEY, DEPARTMENT OF CIVIL SERVICE, PLAINTIFF,
v.
THE PARKING AUTHORITY OF THE CITY OF TRENTON, AND MARY G. ROEBLING, INDIVIDUALLY AND AS CHAIRMAN OF SAID AUTHORITY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided August 4, 1953.
*285 Mr. Theodore D. Parsons, Attorney-General of the State of New Jersey (Mr. John W. Griggs, Deputy Attorney-General, appearing), on motion for a summary judgment for the plaintiff.
Mr. John J. Connell, on a motion for a summary judgment for the defendants.
WOODS, J.S.C.
This cause came on for a hearing and argument to determine whether or no the employees of the Parking Authority of the City of Trenton, and Mary G. Roebling, individually and as chairman of said authority, are subject to the provisions of Title 11 of the Revised Statutes (Civil Service Act). Plaintiff requests defendants submit for classification the names, salaries and compensation of all its (the parking authority's) employees, as of July 30, 1952, and complains of defendants' failure so to do.
The defendants in their answer contend that they have no employees subject to the provisions of the Civil Service Act; that the act (Title 11) does not apply to the defendant parking authority, and that the employees of the parking authority are not employees of the City of Trenton so as to come within the purview of the Civil Service Act.
Counsel filed briefs and argued orally. Affidavits supporting the motions are before the court. For the plaintiff the affidavit of Louis J. Russo sets forth that on or about November 7, 1911 the electorate of the City of Trenton by referendum adopted Title 11 of the Revised Statutes of New Jersey. The defendants submit the affidavit of W. Enos Wetzel, treasurer of the Trenton parking authority, which among other matters sets forth the ordinance creating the authority under N.J.S.A. 40:11A-1 et seq., and states that having been duly incorporated, the Parking Authority *286 of the City of Trenton entered upon the exercise and performance of its duties as provided by the statute. We quote paragraphs 4, 5 and 6 of the affidavit of Mr. Wetzel:
"4. All of the operating expenses of the Parking Authority of the City of Trenton are met from the proceeds of fees charged the public for parking, including the payment of compensation to its employees. The employees of the Parking Authority are hired by it as an independent authority and the City of Trenton has no control over said hiring. The duties of the said employees of the Parking Authority are those prescribed by the Authority and the City of Trenton has no control thereover. The amount of compensation to be paid the employees of the Parking Authority is prescribed by the Authority and the City of Trenton has no control thereover.
5. Profits derived by the Parking Authority from its operations are retained by it and are not turned over to the City of Trenton. Conversely, should a loss be sustained by the Parking Authority in its operation, it has no right to look to the City of Trenton to make up said losses for it.
6. The only connection between the Parking Authority of the City of Trenton and the Board of Commissioners of the City of Trenton is that under R.S. 40:11A-1, et seq. the members of the Parking Authority are appointed by the said Board of Commissioners of the City of Trenton and that from time to time the City of Trenton has made gifts of land to the Parking Authority of the City of Trenton under the provisions of R.S. 40:11A-23a. In all other respects, the Parking Authority of the City of Trenton is completely independent of the Board of Commissioners of the City of Trenton and the municipal corporation known as the City of Trenton."
Defendants submit that the "device of the authority is a relatively new one  that its function is to permit the accomplishment of a public purpose by the creation of a public corporation  to get around the debt limitations of a governmental subdivision." "Such authority shall constitute an agency and instrumentality of the municipality or county creating it." N.J.S.A. 40:11A-4.
The enabling act provides: "The governing body shall appoint five persons as commissioners of the authority." Ibid. Also, "No commissioner of any authority may be an officer or employee of the municipality or county for which the authority is created." N.J.S.A. 40:11A-5. "The *287 authority shall select a chairman and a vice-chairman from among its commissioners, and it may employ a secretary, technical experts and such other officers, agents and employees, permanent and temporary, as it may require, and shall determine their qualifications, duties and compensation." Ibid. "An authority shall constitute a public body corporate and politic, exercising public and essential governmental functions, and having all the powers necessary or convenient to carry out and effectuate the purposes and provisions of this chapter." N.J.S.A. 40:11A-1 to 40:11A-25. Then the statute (N.J.S.A. 40:11A-6) goes on to provide "including the following powers in addition to others herein granted." (These are set forth in subsections (a) to (k). The powers, without enumerating them, are broad and are justifiable in the exercise of the police power of government. Moreover, it has the right of eminent domain and the right to issue bonds which "shall not be a debt of the State or any political subdivision thereof and neither the State nor any political subdivision thereof and be liable thereon, nor in any event shall such bonds or obligations be payable out of any funds or properties other than those of said authority." (Italics the court's) On the termination of the authority's existence, the authority's property goes back to the municipality or county creating it.
The Civil Service Act, Title 11 of Revised Statutes of New Jersey, which by referendum of the legal voters of the City of Trenton was adopted on or about November 7, 1911, operates directly upon and subjects to its provisions all persons "in the civil service of the state." R.S. 11:4-2. There could be no impact of the provisions of the Civil Service Law upon a county, municipality or school district except through a referendum as provided in chapter 20 of Title 11.
Reference has been made to authorities and their relationship to the Civil Service Act. These so-called state and other authorities constitute independent bodies corporate and politic. Subject to exception, their employees are not in civil service of the State of New Jersey, but in the service *288 of these independent corporations. In fact, the Civil Service Act made no provisions for such employees. It was for this reason, probably, that supplemental independent legislation was enacted in the Local Housing Authorities Law (L. 1938, c. 19). N.J.S.A. 55:14A-4 authorizes any county or municipal governing body to create a body corporate and politic to be known as the housing authority of such county or municipality creating it. It is noteworthy that this original 1938 act constituting a local housing authority, when created, a public body corporate, made no reference to the civil service status of its employees. The authority came into existence upon action by the county or municipal governing body, not by action of the voters or taxpayers through referendum. By chapter 64 of the Laws of 1943, the Legislature provided that all persons employed at the time the act became effective (April 2, 1943), by any municipal housing authority, with certain exceptions, "shall hold their respective employments subject to the provisions of said subtitle 3 of Title 11." L. 1943, pp. 261-262. Also, a supplement followed in the year 1945. See N.J.S.A. 55:14A-6.1 and 55:14A-6.2.
In passing, the court observes that the sewerage authority, although analogous in character and form of creation to the housing authorities, N.J.S.A. 40:14A-7, declares that every sewerage authority "shall be a public body politic and corporate, constituting a political subdivision of the State," but even though so constituted it does not come within the impact of subtitle 3 of Title 11. For the purpose of the case before it, the court need not point out distinguishing features in sewerage and housing authority legislation.
Again, a public housing and development authority, N.J.S.A. 52:27C-22, is neither the State of New Jersey, a county, municipality nor school district, as embraced in the Civil Service Law enactment. No legislation appears to make it such. The New Jersey Turnpike Authority, whose origin lies in Title 27 of the Revised Statutes, constitutes an instrumentality exercising public and essential governmental functions. It has by R.S. 27:23-5 perpetual succession. *289 It is constituted a body corporate and politic; is authorized to appoint, inter alia, additional officers and "to employ consulting engineers, attorney, accountants, construction and financial experts, superintendents, managers and such other employees and agents as may be necessary in its judgment; to fix their compensation, promote and discharge such officers, employees and agents; all without regard to the provisions of Title 11 of the Revised Statutes."
The Sandy Hook Reservation Authority resembles in its organization the public housing and development authority in that it is an entity "in the State Department of Conservation and Economic Development." R.S. 13:15-6(e) referring to employment of personnel provides expressly that the provisions of the Civil Service Law shall be inapplicable to the authority's employees, but that in the event the authority avails itself of the authorization to use employees of the State loaned to the authority for the latter's purposes, the civil service status of such loaned employees shall not be affected. So much for other authorities and commissions.
The Trenton parking authority characteristics show that it is a toll or self-sufficient facility, a creature made possible by chapter 198, Laws of 1948 (N.J.S.A. 40:11A et seq.); that it is an agency and instrumentality of the City of Trenton; that its commissioners are appointed by the governing body of the City of Trenton; that if and when the purposes for which it was created are terminated, its property goes back to its creator. The statute is silent on the question whether or no the officers and employees of the authority come within the provisions of the Civil Service Act. R.S. 11:4-2 operates directly upon and subjects to its provisions, all persons "in the Civil Service of the State." Except through referendum there can be no impact of the provisions of civil service upon a county, municipality or school district. Also, state and local authorities are independent bodies corporate and public. Their employees are not in the civil service of the State of New Jersey, but in the service of these independent corporations. The Civil Service Act makes no provision for such employees. To bring *290 them in requires supplemental and independent legislation, and this for the reason that the purveyor of Title 11, chapter 20 of Revised Statutes contemplated only three kinds of corporations: counties, municipalities and school districts.
Here, all the operating expenses of the parking authority, including compensation paid to its employees, are made from the proceeds of fees charged the public for parking. The employees are hired by the authority. Their duties are prescribed by the authority, as is their compensation. The City of Trenton has no hand in any of these. The authority retains its profits. They are not turned over to the city, and the City of Trenton is not responsible for making up any losses sustained by the parking authority in its operations.
The authority subsists on tolls, not on taxes. It is revenue producing. It does not depend on the State's or municipality's taxing power to function. It is an independent, autonomous public corporation.
Motion by the plaintiff for summary judgment will be denied. Judgment for the defendants.