132 N.J. Super. 501 (1975)
334 A.2d 349
FRANK DeLARMI AND JEREMIAH DUGGAN, PLAINTIFFS-APPELLANTS,
v.
THE BOROUGH OF FORT LEE, NEW JERSEY: BURT ROSS, AS MAYOR OF THE BOROUGH OF FORT LEE, NEW JERSEY; JEFFREY KLEINER, AS POLICE COMMISSIONER OF THE BOROUGH OF FORT LEE, NEW JERSEY; ARTHUR DALTON, AS THE ACTING CHIEF OF POLICE OF THE BOROUGH OF FORT LEE, NEW JERSEY; JAMES J. MULCARE, AS BOROUGH ADMINISTRATOR OF THE BOROUGH OF FORT LEE, NEW JERSEY; CAROL KOHOUT, AS BOROUGH CLERK OF THE BOROUGH OF FORT LEE, NEW JERSEY; THE CIVIL SERVICE COMMISSION AND THE DIRECTOR OF THE CIVIL SERVICE COMMISSION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 3, 1975.
Decided February 26, 1975.
*504 Before Judges LORA, HANDLER and TARLETON.
Mr. Herbert S. Siegal of the New York Bar, pro hac vice, argued the cause for appellant (Mr. Donald R. Conway, attorney; Mr. Timothy J. Sullivan on the brief).
Mr. Armand Pohan argued the cause for respondents Borough of Fort Lee, Burt Ross, Jeffrey Kleiner, Arthur Dalton, James J. Mulcare and Carol Kohout (Messrs. McCarter and English, attorneys).
Mr. John F. Shoosmith, Jr., Deputy Attorney General, argued the cause for respondents Civil Service Commission and its Director (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Theodore A. Winard, Assistant Attorney General, of counsel).
The opinion of the court was delivered by LORA, J.A.D.
Plaintiffs appeal from a dismissal of their complaint in lieu of prerogative writs which sought to compel defendants to appoint them as permanent policemen in the Borough of Fort Lee.
Effective December 13, 1971 plaintiff Frank DeLarmi was given a temporary appointment as a patrolman in the Borough of Fort Lee under the Emergency Employment Act of 1971 (hereinafter E.E.A.), 42 U.S.C.A. § 4871 et seq. His appointment was recorded by the Department of Civil Service as "recorded pending review."
*505 Plaintiff Jeremiah Duggan was given a provisional appointment under the E.E.A. effective May 9, 1972. The Department of Civil Service approved the appointment pending open competitive examination.
Both plaintiffs are honorably discharged veterans of the United States Armed Forces. The availability of federal funds under the E.E.A. expired on June 30, 1973.
DeLarmi's appointment was terminated as of July 1, 1973 and he was then rehired on July 11, 1973 under a "temporary appointment pending open competitive examination." The resolution recited that "[w]hereas E.E.A. funds have been made available to the Borough of Fort Lee for the purpose of employing certain persons as officers and employees of the Borough, now, therefore be it resolved  that Frank DeLarmi is hereby provisionally appointed as a patrolman in the Fort Lee Police Department effective July 1, 1973." Duggan's appointment was terminated as of September 30, 1973 and he was given a temporary appointment as a policeman "pending open competitive examination."
At oral argument on the return day of the order to show cause plaintiffs' attorney contended that plaintiffs not only were not told that they would be required to take an examination before they could be given a permanent position but were led to believe they were not required to do so. Furthermore, he insisted that when DeLarmi signed his application for appointment the word "temporary appointment pending open competitive examination" were not on the form.
In support of this contention he pointed out that on DeLarmi's application form in the area marked "For Civil Service Department Use Only," the boxes which were checked showing the Department's action were (1) "Provisional Appointment," (2) "Approval Pending," and (3) "Disposition of Certification." The box which would have shown approval of provisional appointment pending open competitive examination was not checked. (We note that on Duggan's form the boxes for "Provisional Appointment," "Approval Pending" *506 and "Open Competitive Examination" were checked.) The borough asserted by affidavit that plaintiffs were aware of and on October 12, 1973 received hand-delivered notification of the examination.
On or about December 18, 1973 plaintiffs completed the 60-day police training course given by the New Jersey Department of Law and Public Safety Police Training Commission at Sea Girt, New Jersey, and were awarded the New Jersey State Qualifying Certificate.
On January 8, 1974 plaintiffs were notified by letter that they were requested to meet with the acting chief of police, the borough administrator and the police commissioner on January 11, 1974. Following that meeting plaintiffs were dismissed from the Fort Lee Police Department, effective January 17, 1974.
The sole ground for dismissal was that a competitive examination had been held and the Civil Service Commission had pursuant thereto promulgated an eligible list of 387 persons available for appointment as patrolmen, and in accordance with Civil Service Rule 1-14.1 plaintiffs' provisional appointments had to be terminated. Plaintiffs had not taken the competitive examination.
The trial judge found that the Borough of Fort Lee had employed the plaintiffs provisionally, had afforded them training required by N.J.S.A. 52:17B-69, had notified them of the Civil Service open competitive examination, and concluded that such examination was a legitimate requirement and not an "artificial barrier" to employment interdicted by § 4876(c) (18) of the E.E.A. He thereupon entered final judgment dismissing plaintiffs' complaint but restrained the discharge of plaintiffs pending disposition of this appeal.
Plaintiffs contend the trial judge erred (1) in not compelling the borough to appoint them as permanent police officers in light of 42 U.S.C.A. § 4871 et seq. (the Emergency Employment Act of 1971) and N.J.S.A. 52:17B-66, and (2) in not finding that the borough, by availing *507 itself of federal funds under the E.E.A., waived any and all Civil Service requirements regarding plaintiffs.
The Emergency Employment Act of 1971, P.L. 92-54, 42 U.S.C.A. § 4871 et seq., provided in pertinent part:
(c) Required provisions  veterans, special consideration. An application for financial assistance for a public service employment program under this Act shall include provisions setting forth  * * *

* * * * * * * *
(18) assurances that the program will, to the maximum extent feasible, contribute to the elimination of artificial barriers to employment and occupational advancement, including civil service requirements which restrict employment opportunities for the disadvantaged. [42 U.S.C.A. § 4876(c).]
In this connection, however, it is also noted that subsection (15) provided for
* * * assurances that agencies and institutions to whom financial assistance will be made available under this chapter will undertake analysis of job descriptions and a reevaluation of skill requirements at all levels of employment, including civil service requirements and practices relating thereto, in accordance with regulations promulgated by the Secretary; * * *.
Plaintiffs claim that in light of their training and competent performance as temporary patrolmen, their successful completion of the police training course, and the fact that the Civil Service examination is general and non-job oriented, such examination as applied to them is an artificial barrier to employment since the test results are not related to and do not show their competency as policemen.
In their brief plaintiffs specifically state it is not their contention that the Civil Service concept is illegal or unfair, or that Civil Service examinations be declared useless and unconstitutional as artificial barriers to employment, but rather that where a municipality avails itself of federal programs and funds it must comply with the standards and assurances required of such programs, citing Lehigh Const. Co. v. Orange Housing Auth., 56 N.J. 447 (1970). Accordingly, *508 they assert that Congress has required, as a prerequisite to the receipt of federal funds, the waiver of State Civil Service requirements.
Thus, the primary issue is whether the Civil Service examination as applied to plaintiffs is an artificial barrier to employment. We agree with the trial judge that the Civil Service examination is a legitimate requirement for public service and hence not within the prohibition of the E.E.A. The purpose of requiring an examination is to ensure that appointments and promotions will be made on merit and not on favoritism. As stated in Falcey v. Civil Service Commission, 16 N.J. 117 (1954):
The important social objectives of the constitutional and statutory provisions are evident; they are designed to aid in obtaining effective public service through personnel selected on the basis of proper standards and qualifications rather than upon political or other extraneous considerations. See Sullivan v. McOsker, 84 N.J.L. 380, 385 (E. & A. 1913). [at 122]
Since the examination has a legitimate purpose, it does not fall within the class of "artificial barriers to employment and occupational advancement, including civil service requirements which restrict employment opportunities for the disadvantaged." 42 U.S.C.A. § 4876(c) (18). Rather than being a barrier to employment, the examination ensures that appointments will be fairly made.
The E.E.A. was enacted as a stopgap measure to provide temporary public employment to the unemployed during a high unemployment period and to provide the training to enable its participants to secure more permanent employment in either the public or private sector. 42 U.S. C.A. § 4876 (b) (3) (4). The objective was the removal of "artificial barriers," not legitimate requirements for performance of the job. Sen. Rep. No. 92-48, 92d Cong., 1st Sess. (1971); U.S. Code Cong. and Admin. News, 92d Cong., 1st Sess. 1971, at p. 1189.
The act did not by its terms purport to do away with all Civil Service requirements but only those which *509 restricted employment opportunities for the disadvantaged. While the report as well as the act did not define an "artificial" as opposed to a "legitimate" requirement, the examination requirement is a sine qua non of the Civil Service system. It is evident then that the E.E.A. intended to preclude only those requirements which were restrictive as to the disadvantaged. We suggest, for example, certain educational qualifications or language proficiencies might fall into that category.
It is interesting to note that the New Jersey Department of Civil Service in its regulations pertaining to E.E.A. appointees has provided that such appointees may receive appointment to regular positions only through regular open competitive examination procedures. Civil Service Personnel Manual, § 20-5.102(b).
There is no express or implied provision in the E.E.A. that those employed under its provisions are to automatically become permanent employees upon the expiration of the act, nor is there any suggestion that a waiver of Civil Service requirements was mandated or even contemplated by Congress as a precondition to the receipt of federal funds under the act. By the same token, the fact that the greater number of municipalities in Bergen County have not adopted Civil Service is irrelevant.
Plaintiffs further argue that respondents are estopped from denying them appointment because of Fort Lee's misrepresentations as to the necessity of taking a Civil Service examination to secure permanent appointment. Aside from the categorical denial that any such representations were made, doctrines of estoppel are not applied against the State and its counties and municipalities to the same extent as they are against individuals and private corporations.
Appointments of police officers are a governmental function in the performance of which a municipality may not be bound or estopped by unauthorized acts of its officers. Bayonne v. Murphy & Perrett Co., 7 N.J. 298, 311 (1951); Keenan v. Essex Cty. Bd. of Chosen Freeholders, 106 N.J. *510 Super. 312, 316 (App. Div. 1969). Certainly the doctrine may not be applied to the actions of an appointing authority insofar as its powers to make appointments in the classified service are concerned. Representations of an appointing authority operating under Civil Service that it will appoint or promote someone to a Civil Service position without complying with Civil Service law are illegal and not binding upon the Department of Civil Service.
Lastly, plaintiffs assert that the Police Training Commission Act, N.J.S.A. 52:17B-67 et seq., would be violated if plaintiffs were required to take the examination after completing the police training course. However, N.J.S.A. 52:17B-68 merely provides that "no person shall hereafter be given or accept a permanent appointment as a police officer unless such person has successfully completed a police training course at an approved school." This is a requirement for all who seek a permanent police position and was not intended by the Legislature to supersede or to be in lieu of a Civil Service examination in those municipalities operating under Civil Service.
Confirmation of this general legislative intent may be found in L. 1974, c. 177, approved and effective December 10, 1974 which provides that certain women who have been employed as sheriff's officers on a temporary basis for 2 1/2 years and who graduated in the upper 10% of the class of a police academy approved and authorized by the Police Training Commission, and who attended such police academy under a federal grant pursuant to the E.E.A., shall be eligible for appointment as a sheriff's officer on a permanent basis without having to take a Civil Service open competitive examination.
In view of the foregoing it would appear that plaintiffs' remedy, if any, lies with the Legislature and not the courts.
Affirmed.