UNITED STATES of America, Plaintiff,

v.

STATE OF NEW JERSEY, Ralph P. Shaw, Chief Examiner and Secretary, New Jersey State Civil Service Commission, City of Atlantic City, City of Camden, City of East Orange, City of Elizabeth, City of Hoboken, City of Jersey City, City of New Brunswick, City of Newark, City of Passaic, City of Paterson, City of Plainfield, and City of Trenton, municipal corporations, Defendants.

Civ. A. Nos. 950–73, 79–184.

United States District Court,
D. New Jersey.

July 13, 1979.

**1200**

Robert J. Del Tufo, U. S. Atty., Newark, N. J., for plaintiff by Gerald F. George, U. S. Dept. of Justice, Washington, D. C.

John J. Degnan, Atty. Gen., N. J., Trenton, N. J., for defendant, State of New Jersey by Peter J. Calderone and M. Kathleen Duncan, Deputy Attys. Gen., Trenton, N. J.

Emanuel L. Levin, City Solicitor, Atlantic City, N. J., for defendant, City of Atlantic City.

Martin F. McKernan, Jr., City Atty., Camden, N. J., for defendant, City of Camden by Laurence E. Rosoff, Asst. City Atty., Camden, N. J.

Hamlet E. Goore, Jr., East Orange, N. J., for defendant, City of East Orange.

Frank P. Trocino, Elizabeth, N. J., for defendant, City of Elizabeth.

Lawrence E. Florio, Hoboken, N. J., for defendant, City of Hoboken.

Louis P. Caroselli, Jersey City, N. J., for defendant, City of Jersey City.

Gilbert Nelson, New Brunswick, N. J., for defendant, City of New Brunswick.

Salvatore Perillo, Newark, N. J., for defendant, City of Newark.

Joseph A. Pojanowski, III, Passaic, N. J., for defendant, City of Passaic.

Henry Ramar, Paterson, N. J., for defendant, City of Paterson.

Frank H. Blatz, Jr., Plainfield, N. J., for defendant, City of Plainfield.

George T. Dougherty, Trenton, N. J., for defendant, City of Trenton.

## OPINION

MEANOR, District Judge.

The Attorney General of the United States filed suit on October 4, 1977 to enforce the provisions of Section 707 of the Civil Rights Act of 1964,[1] *as amended,* 42 U.S.C. § 2000e–6 ("Title VII"),[2] the nondiscrimination provisions of the State and Local Fiscal Assistance Act of 1972, *as amended,* 31 U.S.C. § 1242 ("Revenue Sharing Act"),[3] and for the purposes of protecting and enforcing rights guaranteed by the Fourteenth Amendment to the Constitution of the United States. The Attorney General alleged that the State of New Jersey, the Chief Examiner for the New Jersey Civil Service Commission, and twelve New Jersey municipalities were engaged in a pattern and practice of unlawful employment discrimination against black and Hispanic persons with respect to hiring and promotion in the fire departments of the defendant municipalities. Subsequently, this action was consolidated with *Vulcan Pioneers, Inc. v. New Jersey Department of Civil Service,* No. 950–73 (D.N.J. complaint filed June 28, 1973) on February 15, 1978.

On June 22, 1978, this Court entered an order dismissing the portion of the United States' complaint which alleged jurisdiction under Title VII of the Civil Rights Act of 1964, *as amended,* on the ground that the Attorney General did not have authority to initiate a "pattern or practice" suit pursuant to Title II absent a referral from the Equal Employment Opportunity Commission ("EEOC"). Plaintiff's motion for reconsideration of such order was denied on October 4, 1978. Then, on January 15, 1979, the Attorney General refiled its Title VII

complaint, which was thereinafter consolidated with the original complaint.

Now, the defendant cities, Camden and Trenton, move to dismiss plaintiff's complaint due to the failure of the Attorney General to satisfy the requisite EEOC procedures before filing this "pattern or practice" suit pursuant to 42 U.S.C. § 2000e–6(e). In addition, the City of Camden moves for summary judgment on the Revenue Sharing Act count alleging it is not in violation of the provisions thereof.

Jurisdiction is invoked in this Court pursuant to 28 U.S.C. § 1345. Venue is proper under 28 U.S.C. § 1391(b).

I. THE ATTORNEY GENERAL IS UNDER NO OBLIGATION TO FOLLOW EEOC PROCEDURES IN FILING "PATTERN OR PRACTICE" SUITS.

Defendant cities Camden and Trenton contend that the United States has not complied with all the procedural requirements of Title VII in initiating this "pattern or practice" suit. Section 707(e), 42 U.S.C. § 2000e–6(e), after granting the Commission authority to investigate and act on "pattern or practice" charges, mandates that "[a]ll such actions shall be conducted in accordance with the procedures set forth in section 2000e–5 [§ 706] of this title." Since the Attorney General has not adequately satisfied the grievance procedures of section 706 before initiating suit under section 707(a), 42 U.S.C. § 2000e–6(a), *i. e.,* filing a timely charge, giving notice to the state employment agency, investigating a charge, and attempting to conciliate the matter, the court, defendants conclude, must dismiss the matter. *Love v. Pullman,* 404 U.S. 522, 523, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972); *Bell v. Wyeth Laboratories, Inc.,* 448 F.Supp. 133 (E.D.Pa.1978).

In opposition, plaintiff asserts that, although it has not followed the procedures

---

**1.** Pub.L. 88–352, Title VII, 78 Stat. 261 (1964), *as amended,* 42 U.S.C. § 2000e–6 (1972).

**2.** Pub.L. 92–261, 86 Stat. 107 (1972).

**3.** The Revenue Sharing Act is known officially as the State and Local Assistance Act of 1972,

P.L. 92–512, 86 Stat. 919 *et seq., codified at* 31 U.S.C. § 1221 *et seq.* (1976), *as amended by* the State and Local Fiscal Assistance Amendments of 1976, P.L. 94–488, 90 Stat. 2341 *et seq.*

of section 706, section 707(a) places no such procedural requirements upon the Attorney General.

■ Contrary to defendants' contentions, a close reading of the language of sections 706, 707, 42 U.S.C. §§ 2000e–5, 2000e–6, and section 5 of the Reorganization Plan No. 1 of 1978 (which was approved by Congress and became effective July 1, 1978, 43 Fed. Reg. 19807, 28971 (1978)) leads this court to the conclusion that the Attorney General is under no obligation to follow regulations promulgated by the Equal Employment Opportunity Commission.

Section 707(a) of the 1964 Civil Rights Act gave the Attorney General the authority to bring a civil action against any person or group of persons whom he had reasonable cause to believe were engaged in a "pattern or practice" of discrimination.[4] Such cases were distinguished from those based on individual complaints of discrimination which were handled by the Commission. 42 U.S.C. § 2000e–5.[5]

However, in 1972, Congress significantly broadened the scope of Title VII by extending its coverage to state governments and governmental agencies and augmented the powers of the EEOC by authorizing the Commission to bring civil actions where it was unable to obtain conciliation agreements from employers. Section 707 was amended to transfer to the Commission the Attorney General's authority to initiate "practice or pattern" actions, 42 U.S.C. § 2000e–6(c),[6] in accordance with the procedures of section 706. 42 U.S.C. § 2006e–6(e);[7] see H.R.Rep. No. 238, 92nd Cong., 2d Sess. 28, reprinted in [1972] U.S.Code Cong. & Admin.News, p. 2137 at p. 2164.

With regard to private employers, the EEOC had sole authority to bring "pattern

---

4. Section 707(a), 42 U.S.C. § 2000e–6(a) provides:

(a) Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General may bring a civil action in the appropriate district court of the United States by filing with it a complaint (1) signed by him (or in his absence the Acting Attorney General), (2) setting forth facts pertaining to such pattern or practice, and (3) requesting such relief, including an application for a permanent or temporary injunction, restraining order or other order against the person or persons responsible for such pattern or practice, as he deems necessary to insure the full enjoyment of the rights herein described.
In the enactment of Section 707, it was unquestionably the design of Congress to provide the government with a swift and effective weapon to vindicate the broad public interest in eliminating unlawful practices, at a level which may or may not address the grievances of particular individuals. *United States v. Allegheny-Ludlum Industries, Inc.,* 517 F.2d 826, 843 (5th Cir. 1975), *cert. denied sub nom., National Organization for Women v. United States,* 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976).

5. Section 706 is addressed to vindication of individual instances of employment discrimination. The EEOC must investigate and make a finding as to reasonable cause. If reasonable cause is found to support the charge, the next step is conciliation. Only when conciliation efforts fail may the EEOC enter into litigation under section 706. *EEOC v. Continental Oil,* 548 F.2d 884, 887 (10th Cir. 1977).

6. Section 707(c), 42 U.S.C. § 2000e–6(c), provides:

(c) Effective two years after March 24, 1972, the functions of the Attorney General under this section shall be transferred to the Commission, together with such personnel, property, records, and unexpended balances of appropriations, allocations, and other funds employed, used, held available, or to be made available in connection with such functions unless the President submits, and neither House of Congress vetoes, a reorganization plan pursuant to chapter 9 of Title 5, inconsistent with the provisions of this subsection. The Commission shall carry out such functions in accordance with subsections (d) and (e) of this section.

7. Section 707(e), 42 U.S.C. § 2000e–6(e), provides:

(e) Subsequent to March 24, 1972, the Commission shall have authority to investigate and act on a charge of a pattern or practice of discrimination, whether filed by or on behalf of a person claiming to be aggrieved or by a member of the Commission. All such actions shall be conducted in accordance with the procedures set forth in section 2000e–5 of this title.

or practice" suits. *See* 42 U.S.C. §§ 2000e–5(b), 2000e–6(c). It is also clear from the language of section 706(f)[8] that individual complaints against public employers were to be brought to or initiated by the Commission which was to proceed with its "informal methods of conference conciliation and persuasion."[9] Only when such methods failed and after referral by the EEOC following procedures prescribed in section 706 did authority shift to the Attorney General. He was then empowered to bring a civil action against public employers with respect to individual complaints.

Finally, where the defendant was a public employer, section 707 required such actions to be brought, if at all, by the Attorney General, only upon referral from the Commission following the procedures of section 706. *United States v. Fresno Unified School District,* 412 F.Supp. 392, 393 (E.D. Cal.1976); *United States v. State of South Carolina,* 445 F.Supp. 1094, 1111 (D.S.C. 1977) (three judge panel), *aff'd mem. sub nom., National Educational Association v. South Carolina,* 434 U.S. 1026, 98 S.Ct. 756, 54 L.Ed.2d 775 (1978); Conf.Rep. on H.R. 1746, 92nd Cong., 2d Sess. 4, *reprinted in* [1972] U.S.Code Cong. & Admin.News 2137 at 2182.

On July 1, 1978, however, section 5 of the Reorganization Plan[10] transferred to the

---

**8.** Section 706(f) provides that if, after a charge is filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission,

> the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent *not a government,* governmental agency, or political subdivision named in the charge. In the case of a respondent *which is a government,* governmental agency, or political subdivision, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the *Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent* in the appropriate United States district court.

42 U.S.C. § 2000e–5. (Emphasis added.)

**9.** Section 706(b), 42 U.S.C. § 2000e–5(b).

**10.** Section 5 of the Reorganization Plan of 1978 was approved by Congress and became effective July 1, 1978. In particular, pursuant to his authority to make coordination and functional changes among the federal agencies, 5 U.S.C. § 901 *et seq.,* the President, on February 23, 1978, submitted to Congress a plan to consolidate Federal Equal Employment Opportunity Activities. Reorganization Plan No. 1 of 1978, *reprinted in* [1978] U.S.Code Cong. & Admin. News, pp. 9795–9800. This plan, *inter alia,* vested the Attorney General with authority to independently initiate "pattern or practice" suits against public sector employers. Reorganization Plan No. 1 of 1978 § 5, *reprinted in* [1978] U.S.Code Cong. & Admin.News, p. 9800. The Plan took effect when neither House of Congress passed a resolution disfavoring it within the 60 day period prescribed by statute for disapproval of such plan. 5 U.S.C. § 906(a); *see* H.R.Res. 1049, 95th Cong., 2d Sess., 124

Cong.Rec. 3201–07 (1978); S.Res. 404, 95th Cong., 2d Sess., 124 Cong.Rec. 7124 (1978).

Thereafter, on June 30, 1978, President Carter issued Executive Order Number 12068 declaring:

> . . . [I]n order to *clarify* the Attorney General's authority to initiate public sector litigation under Section 707 of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e–6), it is ordered as follows:
> 1–1. Section 707 Functions of the Attorney General
> 1–101. Section 5 of Reorganization Plan Number 1 of 1978 . . . shall become effective July 1, 1978.
> 1–102. The functions *transferred* to the Attorney General by Section 5 of Reorganization Plan Number 1 of 1978 shall, consistent with Section 707 of Title VII of the Civil Rights Act of 1964, as amended, be performed in accordance with Department of Justice procedures heretofore followed under Section 707.

(Emphasis added.) Exec. Order No. 12068, 43 Fed.Reg. 28971 (1978), *reprinted in* [1978] U.S. Code Cong. & Admin.News, p. 9729.

The Plan, thus, clarified the present authority of the Attorney General to initiate "pattern or practice" suits against public employers. The Plan, as approved, is set forth as follows:

> Section 5. Transfer of Public Sector 707 Functions
> Any function of the Equal Employment Opportunity Commission concerning initiation of litigation with respect to State or local government, or political subdivisions under Section 707 of Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. § 2000e–6) and all necessary functions related thereto, including investigation, findings, notice and an opportunity to resolve the matter without contested litigation, are hereby transferred to the Attorney General, to be exercised by him

Justice Department "full authority over the procedures leading to the filing of pattern or practice suits under Title VII against state and local governments." S.Rep. No. 750, 95th Cong., 2d Sess. 6 (1978). As explained by the House, "the purpose of section 5 of the Reorganization Plan [is] to restore the certainty of this authority [to initiate practice and pattern suits against public employers] in the hands of the Attorney General so that he can fully carry out the responsibility in such litigation as Congress intended." H.Rep. No. 1069, 95th Cong., 2d Sess. 8 (1978).

The Reorganization Plan clarifies the Attorney General's authority to initiate "pattern or practice" suits, i. e., under section 707, as well as to sue on valid referrals from the EEOC, i. e., under section 706. See President Carter's submission of Reorganization Plan No. 1 of 1978 to Congress, 124 Cong.Rec. 2141–43 (1978). The function of section 707(e), therefore, which defendants contend applies to the Justice Department via section 707(a), is now more limited.[11] Section 707(f) was designed in 1972 to "[a]ssimilate procedures for new proceedings brought under section 707 to those now provided for under section 706 so that the Commission may provide an administrative procedure to be the counterpart of the present section 707 action." H.Rep. No. 238, 92d Cong., 2d Sess. 28, reprinted in [1972] U.S.Code Cong. & Admin.News, p.

2137 at 2164 (reporting section 707(b) of H.R.1746). Section 707(e) was thus implemented in 1972 to insure administrative consistency now that the EEOC had "pattern or practice" authority identical to its authority to act upon charges of individual discrimination.

Before the statutory change in 1972, there was no necessity for such administrative consistency since the Attorney General had the authority to initiate "pattern or practice" suits upon reasonable cause to believe that any person or group of persons was engaged in a "pattern or practice" of discrimination. United States v. Masonry Contractors Association of Memphis, Inc., 497 F.2d 871 (6th Cir. 1974); United States v. International Association of Bridge, Structural and Ornamental Iron Workers, Local 1, 438 F.2d 679 (7th Cir.), cert. denied, 404 U.S. 830, 92 S.Ct. 75, 30 L.Ed.2d 60 (1971). It was not necessary for a charge to have been filed with the EEOC, as required under 42 U.S.C. § 2000e–5, nor was it necessary for the Attorney General to comply with the provisions of said section as to notice, informal methods of correction of the discriminatory acts, and the time limits for filing a complaint. Masonry Contractors, supra, 497 F.2d at 875–76.[12]

In 1978, the Attorney General again was given the authority to initiate public sector litigation. The necessity for administrative

---

in accordance with procedures consistent with said Title VII. The Attorney General is authorized to delegate any function under Section 707 of said Title VII to any officer or employee of the Department of Justice.

11. See, e. g., Allegheny-Ludlum, supra, wherein the Fifth Circuit recognized that section 707(e) cannot incorporate every procedural prerequisite of section 706(b). At issue was the incorporation in section 707(e) of the "intervention as of right" provision of section 706(f)(1). The Court held that there was "no legislative history evincing a favorable congressional attitude toward unconditional private intervention in government 'pattern or practice' litigation," and "in the absence of an express provision for intervention we choose to follow its signals." Id. at 844.

12. Such analysis is in conformance with the legislative intent. Congress, in 1964, specifically allowed the Attorney General to initiate a

pattern or practice action without the "consent of the aggrieved parties or party, without first referring the matter to the State or local authorities where State or local FEPC laws exist, and without a finding by the Commission that discrimination in fact exists." 110 Cong.Rec. 15875 (1964) (remarks of Representative Cramer on changes made by the Senate to the House version of H.R. 7152 which was thereafter approved). The only statutory directive to the Attorney General in bringing such suits was enunciated by Emmanuel Cellar, Chairman of the House Judiciary Committee: "[The Attorney General] should have a reasonable case before he sues, but of course, he—not the court—decides whether reasonable cause exists, and the issue of reasonable cause does not present a separate litigable issue." 110 Cong. Rec. 15895 (1964).

consistency *vis a vis* the Attorney General is not present as it was in 1972 with the Commission. Without any legislative history evincing a congressional attitude that the administrative qualifications placed upon the EEOC under section 707(e) have likewise been placed upon the Attorney General under section 707(a), this Court is thus left with the language of section 5 of the Reorganization Plan. In part, the terms specify that the Attorney General exercise his authority "in accordance with procedures consistent with said Title VII." Section 707 nowhere mandates that the Attorney General follow EEOC procedures before initiating suit. His duties under section 707(a) are explicitly enumerated in that section and are not made dependent upon prior administrative proceedings.[13] Given the congressional intent to eliminate instances of overlapping authority in the area of equal employment opportunity enforcement, and the recent statutory change restoring the Attorney General's authority in this area, this Court is inclined to adopt the judicial rationale interpreting section 707 prior to the 1972 amendments. *See Masonry Contractors, supra.*[14]

■ Accordingly, this Court holds that the Attorney General need not adhere to the administrative requirements of section 706 when initiating a "pattern or practice" discrimination action.[15] The determination of reasonable cause is the only qualification placed upon the Attorney General's authority under section 707(a).[15a]

---

13. One district court has taken the same approach on this issue. In pertinent part, the court stated: "[t]he Attorney General is not under the law required to follow regulations promulgated by the [EEOC]. . . . " *United States v. Baltimore County,* 19 FEP Cases 397, 401 (D.Md.1978).

Furthermore, the President's Executive Order implementing section 5 of the Reorganization Plan made clear "[t]he functions transferred [under the Plan] . . . shall, consistent with section 707 of Title VII of the Civil Rights Act of 1964, as amended, be performed in accordance with *Department of Justice procedures* heretofore followed under Section 707." Exec. Order No. 12068, 43 Fed.Reg. 28971 (1978) (emphasis added). Although such language is not contained in section 5 of the Reorganization Plan, Titles 5 U.S.C. § 903 and 42 U.S.C. § 2000e-6(c) supply the express or implied authorization of Congress for the President to so act. Title 5 U.S.C. § 903 expressly permits the President to submit reorganization plans to Congress transferring, consolidating or abolishing functions of one agency to the jurisdiction and control of another. Title 42 U.S.C. § 2000e-6(c), which transferred in 1972 the Attorney General's Title VII functions to the EEOC, subjects such transfer to subsequent reorganization plans submitted to and approved by Congress under 5 U.S.C. § 901 *et seq.*

Thus, the Executive Order is plainly a reasonable exercise of the President's responsibility in implementing intelligent and more efficient structural and operational changes in executive branch agencies and departments *i. e.,* the EEOC and the Justice Department. This Court accordingly, has no difficulty in concluding that the Executive Order was validly issued pursuant to constitutional and statutory authority and thus has the full force and effect of law.

Reorganization Plan No. 1 of 1978, *reprinted in* [1978] U.S.Code Cong. & Admin.News, pp. 9795–9800; *United States v. New Orleans Public Service Inc.,* 553 F.2d 459 (5th Cir. 1977); *Contractors Ass'n of Eastern Pa. v. Secretary of Labor,* 442 F.2d 159 (3d Cir.) (Gibbons, J.), *cert. denied,* 404 U.S. 854, 92 S.Ct. 98, 30 L.Ed.2d 95 (1971) (Gibbons, J.); *cf. Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153 (1952) (Jackson, J., concurring) (executive orders may not override contradictory congressional expressions).

14. Suit in *Masonry Contractors* was brought under section 707 before the section was amended in 1972. 497 F.2d at 875.

15. Such procedures do apply where a private employer is involved, 42 U.S.C. § 2000e-5(b); *Baltimore County supra,* 19 FEP Cases at 401 or where an individual complaint is filed against a public employer, 42 U.S.C. §§ 2000e-5(b), 2000e-6(e); *State of South Carolina, supra,* 445 F.Supp. at 1110–11.

15a. The Ninth Circuit in *United States v. Fresno Unified School District,* 592 F.2d 1088 (9th Cir. 1979), recently held that the Attorney General could only initiate a pattern or practice suit if he had previously satisfied the procedural requirements of § 706. In so doing, the Court relied upon the language of Reorganization Plan § 5 which transferred from the EEOC to the Attorney General all necessary functions related to the initiation of pattern or practice litigation "including investigations, findings, notice and an opportunity to resolve the matter without contested litigation . . . to be exercised by him in accordance with the procedures consistent with said Title VII." *Id.* at 1095. Although such language incorporates

■ The facts herein indicate that the actions taken by the United States prior to initiating this litigation were sufficient to constitute reasonable cause. In particular, a Justice Department's investigation determined that according to a 1970 census, the twelve defendant municipalities had a total population of 1.4 million persons, 34% of whom were black and 6% were Spanish-surnamed. As of March 1976, these cities had approximately 3,800 uniformed firefighter personnel, 4.2% of whom were black and 0.2% were Spanish-surnamed. Defendant's Brief, Attachment E.[16]

Thereupon, the government sent letters, dated December 4, 1974, January 15, 1975, and December 15, 1975, to the defendant municipalities informing them of the problem. By letter dated May 18, 1977, plaintiff notified defendants of its conclusion that a pattern of unlawful employment did exist and that corrective action was necessary. Subsequently, four meetings were held to discuss the possibility of settlement without contested litigation. When such negotiations failed, the Justice Department brought suit on October 4, 1977. Defendant's Brief at 3. As mentioned hereinbefore, this action was dismissed.

Prior to refiling the present Title VII complaint, plaintiff contends that it re-informed defendants of its ongoing investigation of minority employment opportunities in the defendant fire departments and made it clear that settlement and conciliation would be attempted. Settlement proposals were submitted by both parties, apparently without success. The Justice Department then filed the instant complaint on January 15, 1979.

Although defendants vigorously contend that the government did not in good faith attempt to settle the matter, *see* Rosoff

Affidavit, filed March 26, 1979; Dougherty Affidavit filed February 8, 1979, this Court finds that plaintiff had reasonable cause to bring suit and that its actions prior to initiation thereof were sufficient for the purposes of section 707.

Accordingly, in view of the foregoing analysis, the motions of defendant cities, Camden and Trenton, to dismiss the complaint are denied.

## II. THE CITY OF CAMDEN'S SUMMARY JUDGMENT MOTION ON THE REVENUE SHARING ACT COUNT IS DENIED.

The City of Camden moves for summary judgment on the ground that it is not in violation of the anti-discrimination clauses of the Revenue Sharing Act, as amended, 31 U.S.C. § 1242. Defendant argues that the State of New Jersey, not the City, has "real authority" over hiring and promotion of firefighters, because under the New Jersey Civil Service Act, N.J.S.A. 11:1–1 *et seq.,* a municipality cannot appoint or promote without benefit of an eligibility list based on results of examinations prepared and administered by the state. Therefore, the City asserts that the state, not the City of Camden, is responsible for any discrimination in hiring and promotion. In the area of recruitment, defendant argues that the depositions of Patrick Keating and Theodore Pumas reveal uncontroverted facts which show an absence of discrimination. Defendant's Brief at 47–50.

In addition, the City points out that it is not receiving revenue sharing funds nor has it appropriated said funds in the past to its fire department. The City is thus exempt from the anti-discrimination provisions of the Revenue Sharing Act, 31 U.S.C. § 1242(a)(2)(A), and the Attorney General is

---

some of the procedures listed in § 706 such language alone is not sufficient to warrant a conclusion that, therefore, § 707(e) governs § 707(a). In light of the analysis in the text of this opinion I decline to follow the Ninth Circuit. Moreover the determination of reasonable cause in and of itself mandates that the Attorney General make sufficient investigations and findings, and give appropriate notice

as well as opportunity to resolve the matter without litigation.

**16.** Statistics by themselves raise an inference of discrimination. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *Erie County Human Relations Commission v. Tullio,* 493 F.2d 371 (3d Cir. 1974).

without jurisdiction to file the same. Finally, defendant contends that the Attorney General did not have reasonable cause to bring this action under 31 U.S.C. § 1242(g). Plaintiff's answer to defendant's interrogatory No. 48.

For the following reasons, the City of Camden's motion is denied.

■ The New Jersey Civil Service Commission has the responsibility of preparing and administering civil service examinations and promulgating eligibility lists pursuant thereto. N.J.S.A. 11:1–1 *et seq.* Such examinations are a prerequisite for public service in counties, municipalities, and school districts which have by an affirmative referendum adopted the provisions of the New Jersey Civil Service Act. N.J.S.A. 11:19–1 *et seq.*; N.J.S.A. 11:20–1 *et seq.; State Department of Civil Service v. Parking Authority of City of Trenton,* 27 N.J.Super. 284, 99 A.2d 177 (Law Div.1953), *aff'd,* 29 N.J.Super. 335, 102 A.2d 669 (App. Div.1954).[17] The purpose of requiring these examinations is to ensure that appointments and promotions will be made on merit and not on favoritism. *De Larmi v. Borough of Fort Lee,* 132 N.J.Super. 501, 508, 334 A.2d 349, 352 (App.Div.1975), *certif. denied,* 68 N.J. 135, 343 A.2d 423 (1975); *Falcey v. Civil Service Commission,* 16 N.J. 117, 122, 106 A.2d 549, 552 (1954).

■ Camden argues that, as an appointing authority under the New Jersey Civil Service Act, N.J.S.A. 11:19–1 *et seq.,* it is bound to follow the requirements of the Act in the appointment, employment, and promotion of municipal employees and has no discretion or "real authority" to do otherwise. Such argument is without merit.

The State Civil Service Commission does not have the "real authority" in hiring and promoting firefighters. The Commission in preparing and supervising the written examinations merely plays an administrative role in the municipal hiring process. It does no recruiting. It makes no final employment decisions. It only designs the written tests, insuring that they are objective and apolitical. Rather, it is the cities themselves which make the final hiring and promotional decisions. Such decisions are dependent upon written and physical criteria, as well as upon the financial conditions and manpower requirements of each municipality. This Court may indeed ultimately find both the Commission and the cities responsible in part for the utilization of selection processes which allegedly discriminate against blacks and Hispanics and fashion appropriate relief therefor. Accordingly, the City of Camden may well be found in violation of 31 U.S.C. § 1242.

Defendant's additional contentions that the Attorney General did not have reasonable cause to institute suit and the City was not receiving revenue sharing funds at the time suit was filed are equally unpersuasive. First, as pointed out earlier, this Court holds that the Attorney General had reasonable cause to institute this "pattern or practice" suit. *See* H.R.Conf. Rep. 1720, 94th Cong., 2d Sess. 17, *reprinted in* [1976] U.S.Code Cong. & Admin.News, p. 5151 at p. 5204.

■ Secondly, there is no requirement that the City be receiving revenue sharing funds at the time of filing suit. 31 U.S.C. § 1242(g) provides:

Whenever the Attorney General has reason to believe that a State government or a unit of local government *has engaged or is engaging* in a pattern or practice in violation of the provisions of this section, the Attorney General may bring a civil action in an appropriate United States district court. Such court may grant as relief any temporary restraining order, preliminary or permanent injunction, or other order, as necessary or appropriate to insure the full enjoyment of the rights described in this section, including the suspension, termination, or repayment of funds made available under subchapter 1 of this chapter, or placing

---

**17.** On October 1, 1923, the voters of the City of Camden affirmatively adopted the Civil Service Act. Defendant's Brief at 27. Thus, from that day forward, the City agreed to use the civil service test as one of its hiring prerequisites.

any further payments under subchapter 1 of this chapter in escrow pending the outcome of the litigation.

(Emphasis added.) Such provision specifically contemplates present or past conduct by a recipient agency. S.Rep. No. 1207, 94th Cong., 2d Sess. 26–27, *reprinted in* [1976] U.S.Code Cong. & Admin.News 5151 at 5176–77; H.R.Conf. Rep. 1720, 94th Cong., 2d Sess. 12–13, *reprinted in* [1976] U.S.Code Cong. & Admin.News, p. 5151 at pp. 5199–5200. Since Camden admits receiving and allocating revenue sharing funds to its fire department in 1973 and 1974, *see* Defendant's Brief at 25, it may properly be sued under the Revenue Sharing Act. Had Camden never received revenue sharing funding, then its contention would be meritorious. 31 U.S.C. § 1242(a)(2).

Accordingly, for the above reasons, the City of Camden's motion for summary judgment is denied.

Plaintiff shall submit an order in accordance with this opinion within 10 days.